### In the Matter of Bernard C. DORY, Respondent.

### No. 88–740.

District of Columbia Court of Appeals.

Submitted Dec. 1, 1988.

Decided Jan. 4, 1989.

Ross T. Dicker, Asst. Bar Counsel, for the Office of Bar Counsel.

Bernard C. Dory, pro se.*

Before FERREN and SCHWELB, Associate Judges, and GALLAGHER, Senior Judge.

PER CURIAM:

This matter is before the court on the Report and Recommendation of the Board on Professional Responsibility (the Board). After considering a Report of a Hearing Committee, the Board found that Dory had neglected a legal matter in violation of DR 6-101(A)(3) and recommend suspension for thirty days.

The facts concerning Dory's misconduct are summarized in the Board's Report and Recommendation, a copy of which is attached. Briefly, Dory was retained by Mrs. Julia Johnson to probate her mother's estate. Mrs. Johnson advanced Dory approximately $420 towards his legal fee and

costs. After filing a Petition for Probate and related pleadings and causing notice of the petition to be published, Dory did virtually nothing for three years. Although Mrs. Johnson made numerous telephone calls, Dory did not return them. Eventually, Mrs. Johnson obtained other counsel, and the present proceedings were initiated.

In *In re Dory*, 528 A.2d 1247 (D.C.1987) (*Dory I*), this court suspended Dory for thirty days for neglecting a matter entrusted to him by another client. That violation occurred a few weeks earlier than the instant one, and the Board found that it arose out of the same stresses which caused the present misconduct. The Board also found Dory to be appropriately remorseful.

Our Disciplinary Rule XI § 7(3), provides in pertinent part that:

[T]he Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted.

Neither Dory nor Bar Counsel has opposed the Board's Recommendation and Report. Accordingly, for the reasons set forth in the Board's Report and Recommendation, respondent Bernard C. Dory is hereby suspended from the practice of law for thirty days, effective thirty days from the date of this opinion.

*So ordered.*

### REPORT AND RECOMMENDATION OF BOARD

This matter is before the Board on Professional Responsibility on the Hearing Committee's report finding that Respondent, in violation of DR 6-101(A)(3), neglected a legal matter entrusted to him. The Committee recommended suspension for 30 days as the appropriate sanction.

---

* No briefs were filed in this court. Named counsel appeared before the Board on Professional Responsibility.

Based on a review of the record as a whole, the Board concludes that the Hearing Committee's factual findings are supported by substantial evidence more than sufficient to satisfy the clear and convincing standard, and the Board therefore adopts those findings. *See* Board Rule 13.-6. The Board also agrees with the Hearing Committee's conclusion that Respondent neglected a legal matter in violation of DR 6–101(A)(3) and that suspension for 30 days would be an appropriate sanction for the misconduct herein.

## I. RESPONDENT'S MISCONDUCT

The facts concerning Respondent's misconduct were, in large part, stipulated by the parties and are otherwise undisputed. Respondent was retained in February 1984 by Mrs. Julia R. Johnson to probate her mother's estate. A few months later, in June 1984, a Petition for Probate and related pleadings were filed with the Register of Wills, and an appropriate notice of the petition was published. However, except for a letter earlier in June 1984 relating to a potential claim against the estate, Respondent essentially did nothing other than to file the Petition for Probate. After a lengthy period of inaction, during which Mrs. Johnson was unsuccessful in several attempts to communicate with Respondent concerning the estate matter, Mrs. Johnson obtained a new attorney to handle the matter.

The Hearing Committee found, and Bar Counsel does not dispute, that Respondent's neglect did not cause any actual prejudice to his client (other than delay) and that there is no evidence of dishonesty or misrepresentation on the part of Respondent. Although Bar Counsel alleged that Respondent's misconduct in handling this estate matter extended beyond neglect and involved additional violations of the disciplinary rules, the Hearing Committee rejected all of these alleged additional violations for lack of clear and convincing evidence.

Moreover, in this proceeding before the Board, Bar Counsel does not challenge the Hearing Committee's rejection of such alleged violations.*

## II. RECOMMENDED SANCTION

The facts in this case present a unique situation that requires the melding together of two well-established principles on sanctions. The first principle is that in considering an appropriate sanction:

Most important is the fact that [the accused attorneys] ... have had unblemished records.... This factor weighs heavily in favor of imposing upon them the lightest sanction that will serve the purpose of Bar discipline.

*In re Reback*, 513 A.2d 226, 233 (D.C.1986) (*en banc*). The second principle, also well-established, is that where respondent's misconduct in a "second case arose during the same period of time as the first" case, and where the two cases come before the Board "at different steps of the disciplinary process", the

appropriate question which the Board must ask and answer ... is simply this: if all of the matters were before the Board simultaneously, what would we recommend as the appropriate discipline?

*Matter of Thompson*, 492 A.2d 866, 867 (D.C.1985).

Prior to 1984 Respondent had an unblemished record. The period of Respondent's misconduct began early in 1984 and resulted in two separate disciplinary cases. This is the second case. The first case was processed through the disciplinary system on an earlier schedule and culminated in an order of the Court suspending Respondent for 30 days. *Matter of Dory*, 528 A.2d 1247 (D.C.1987).

In the prior case, Respondent's misconduct occurred shortly after he agreed in January 1984 to file a motion for a new trial on behalf of a client dissatisfied with a prior jury verdict. As already noted, Re-

---

* The violations alleged by Bar Counsel and rejected by the Hearing Committee involved DR 7–101(A)(2) (intentional failure to seek lawful objectives of client); DR 7–101(A)(2) (intentional failure to carry out contract); DR 1–102(A)(5) (conduct prejudicial to the administration of justice); DR 2–110(A)(1) (withdrawal without Court's permission); and DR 2–110(A)(2) (failure to refund unearned fee upon withdrawal).

spondent's misconduct in this case occurred after he agreed in February 1984 to represent a client in a probate matter. In this second case, the Hearing Committee expressly found that Respondent's

> ... violation is a product of the same stresses which resulted in the first disciplinary violation. The underlying events and to some extent the disciplinary proceedings ran concurrently....

Hearing Committee Report at 13. Thus, it is undisputed that Respondent's misconduct in both cases occurred during substantially the same time frame.

Moreover, as the Board noted in its Report and Recommendation in the earlier case involving Respondent, the record there disclosed "that during this 10-month period, his practice was chaotic due to the substantially increased case load arising out of the departure of two attorneys in his office [and] ... Respondent's consumption of alcohol markedly increased during this period, although he was able to go to his office seven days a week." *In re Dory,* Bar Docket 128-85 (BPR Report and Recommendation, March 30, 1987), at p. 5.

The two cases against Respondent proceeded through the disciplinary system on different time tracks. The Petition Instituting Formal Disciplinary Proceedings against Respondent in the second case was not served until September 15, 1987, which was over a month *after* the Court had entered its opinion and order in the first case suspending Respondent for a period of 30 days. Since the misconduct in both cases occurred during the same period, this is not a situation where Respondent committed a second disciplinary violation after having been previously sanctioned for a prior violation.

Moreover, if this second proceeding against Respondent had been on an earlier time track, there can be little doubt that the two matters would have been consolidated, either by the Board or by the Court. *Compare, Matter of Thompson,* 492 A.2d 866 (D.C.1985) (Court consolidated two cases against same respondent); *Matter of Melvin Washington,* 541 A.2d 1276, 1277-82, (D.C.1988) (Attaching Report of the Board which consolidated three cases against same respondent).

Here, if both cases had been before the Board at the same time on a consolidated basis, the Board would have recommended suspension for a period in the range of 60 days. In such a consolidated proceeding, the record would have disclosed two incidents of misconduct during the same time frame, both involving neglect in violation of DR 6-101(A)(3) and one involving (in addition to neglect) violations of DR 7-101(A)(1) (intentional failure to seek client's lawful objectives) and DR 7-101(A)(2) (intentional failure to carry out employment contract for legal services). Such a consolidated case would therefore have involved violations closely analogous to those in *In re Stanton,* 470 A.2d 281 (D.C.1983), where there was one instance of neglect and two acts of intentional failure to seek a client's lawful objectives. In *Stanton,* the Board recommended, and the court imposed, suspension for 60 days. *See also Matter of Landesberg,* 518 A.2d 96 (D.C.1986) (60 days' suspension for neglect, misrepresentation to client, and failure to return client's file and unearned fee); *Matter of Thompson,* 492 A.2d 866 (D.C.1985) (90 days' suspension for two separate neglect cases, and another case of unauthorized communication with another attorney's client).

This case comes to the Board in a procedural posture where it is impossible to consolidate the first and second cases involving concurrent incidents of misconduct, because Respondent has already been suspended for 30 days in the earlier case. However, suspension for another 30 days, as recommended by the Hearing Committee, would yield an aggregate suspension of 60 days for the violations in both cases. This would be equivalent to the recommended sanction had both cases been consolidated before the Board at the same time, and accordingly, the Board recommends in this case that the Court suspend Respondent from the practice of law for 30 days.

In arriving at an appropriate sanction under these circumstances, the Board has

been influenced by the Hearing Committee's finding that Respondent has reacted positively to the 30–day suspension in the first case:

> ... the Committee found Respondent to be sincere in his apologies for his conduct and in his willingness to accept responsibility for the neglect of the [second] case. And, as noted above, the neglect and resulting delay [in the second case] did not cause any serious harm to the client.
>
> The concurrence of the facts of this matter with those of the earlier disciplinary matter [in the first case], the Respondent's sincere remorse with regard to his failures as an attorney, and the absence of serious harm resulting from his neglect [in the second case] must be weighed against the fact of the earlier discipline which brought these matters to Respondent's attention and offered him an opportunity to mend his ways.

Hearing Committee Report at 14. The Board accepts these findings by the Committee and concludes that a second 30–day period of suspension (yielding 60 days suspension for the two concurrent incidents of misconduct) is adequate. A longer period of suspension, which might have been justified if the second incident had not been the product of the same stresses as produced the first incident, would serve hardly any purpose other than to punish Respondent. *Compare, In re Kennedy,* 542 A.2d 1225, 1230–31 (D.C.1988). The Board further notes that neither Respondent nor Bar Counsel has objected to imposition of the recommended 30–day suspension for the misconduct in this case.

FOR THE BOARD ON
PROFESSIONAL RESPONSIBILITY
/s/ J. Randolph Wilson
J. RANDOLPH WILSON
CHAIR

All members of the Board concur in this Report and Recommendation except Karen Hastie Williams, Esq. and Ann Keep who did not participate.

Dated: June 9, 1988.

SCHWELB, Associate Judge, concurring in the result:

If I were the trier of fact and writing on a clean slate, I would find the recommended sanctions in this case to be too lenient. Lawyers are members of an honored profession, and much is and ought to be expected of them. *See generally In re Shillaire,* 549 A.2d 336 (D.C.1988). Dory completely neglected the cases of two clients and ignored their inquiries, with much of the neglect in the second case occurring while he was under investigation for the first. In my view, suspension for a total of only sixty days under these circumstances demonstrates more compassion for the errant lawyer than justice for his wronged client and for the public. Indeed, I find the proposed Findings of Fact, Conclusions of Law, and Recommendations filed by Bar Counsel before the Board more persuasive than the assessment of the evidence by the Hearing Committee and by the Board.

Specifically, I think the following passage from Bar Counsel's submission gets to the heart of the issue of intent:

> DR 7–101(A)(1) mandates that an attorney not intentionally fail to seek the lawful objectives of his client through reasonable available means. The court has held that an attorney violates this section if he was "demonstrably aware of (his) neglect or if (his) neglect was so pervasive that (he) must have been aware of it." *In re Reback & Parsons,* 487 A.2d 235, 240 (D.C.1985).
>
> Respondent had to be "demonstrably aware" of his neglect as to the probate. Here, complainant wrote of her efforts to contact Respondent:
>
> Since June 1985, I have called Mr. Dory's office on many occasions. I was always informed that he was out and would return my calls. My calls were never returned ... I have called many times, but he has refused to return my calls or contact me in any manner.

A man is held to intend the foreseeable consequences of his conduct. *Radio Officers Union v. N.L.R.B.,* 347 U.S. 17, 45, 74 S.Ct. 323, 338, 98 L.Ed. 455 (1954). When an attorney does virtually nothing on a case for nearly three years after accepting money from a client and then fails to re-

turn either the money or her numerous phone calls, there surely comes a time when the neglect must be deemed intentional. If, as Dory complains, he had a worsening drinking problem [1] and a horrendous personnel situation and could not do what he was honor bound to do, he should have told the client so and returned her money. I hope that the Board does not treat the "demonstrably aware" standard of *Reback & Parsons* as requiring malice or a specific intent to harm the client. Although intentional failure to seek a client's lawful objectives (DR 7–101(A)(1)), obviously requires more of a showing than does neglect (DR 6–101(A)(3)), I see nothing in the language of the Rule or in our precedents that would require proof of malice or its equivalent.

With respect to restitution for Mrs. Johnson, Bar Counsel recommended that

as to Complainant, Respondent should be ordered to refund the illegal and unearned fee. He accepted $420.00 but refunded $41.00. Therefore, he should refund $379.00 unless the Probate Division permits him to retain some part of it. Respondent knew or should have known on January 27, 1984, that he could not effectively represent Complainant. Despite his being overworked and disillusioned with his practice, Respondent took on complainant's case and performed no meaningful or substantial work.

Bar Counsel's analysis appears to me to be right on target. Neither the Hearing Committee nor the Board has given any indication why restitution has not been recommended. *See In re Taylor*, 511 A.2d 386 (D.C.1986) (*per curiam*); *In re Roundtree*, 467 A.2d 143, 148 (D.C.1983), both holding that restitution may be ordered in neglect cases.

The Board correctly points out that "since the misconduct in both cases occurred during the same period, this is not a

situation where Respondent committed a second disciplinary violation after having been previously sanctioned for a prior violation." The complainant in *Dory I*, however, filed a complaint about Respondent's misconduct on March 27, 1985. Most of the misconduct in the present case, including Dory's failure to return his client's telephone calls, occurred after Dory knew that he was under investigation for a prior violation which he subsequently acknowledged having committed. This, in my view, tends to take some of the bloom off the rose of his prior "unblemished" record.

I am also troubled by the Hearing Committee's finding, adopted by the Board, that the neglect and resulting delay did not cause any serious harm to the client. This may be true with respect to financial harm, although it can hardly be to a surviving daughter's advantage to have a deceased parent's estate tied up for three unnecessary years on account of inexcusable delay by one's advocate. But feelings are facts too. Although the record is not explicit on the point, one does not need an overdeveloped imagination to appreciate how betrayed a client—in this case a bereaved client—feels when a lawyer takes her money, does almost nothing on her case, and refuses to respond to any of her inquiries. Surely her inconvenience and consternation must be considered in any reasonable assessment of the harm which she suffered.

Viewed in its entirety, Dory's conduct over a long period of time seems to me so alien to what being a lawyer is about that more meaningful sanctions are called for. This court's scope of review is, however, restricted by Disciplinary Rule XI § 7(3), quoted in the majority opinion. Moreover, Bar Counsel, who initially recommended suspension of Dory for six months as well as full restitution, has not asked this court to disapprove the Board's recommendation. In an extreme case, these considerations are not conclusive. *See In re Shillaire*,

---

1. Although this court has held that proof of alcoholism and subsequent rehabilitation may be considered in mitigation, the fact that "alcoholism is a cause of attorney misconduct has no bearing on the determination of what sanction should be imposed in the first instance." *In re*

*Reid*, 540 A.2d 754, 759 (D.C.1988) (*per curiam*); *In re Kersey*, 520 A.2d 321 (D.C.1987). I discern nothing in this record which would entitle Dory to benefit from the general *Reid–Kersey* approach.

*supra.* I do not, however, find this to be such an extreme case, and there is no decisive error of law. Accordingly, and with more than a little reluctance, I concur in the judgment of the court.