**In re Ellen R. DELATE, Respondent, A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 90–14.**

District of Columbia Court of Appeals.

Submitted April 5, 1990.[1]

Decided Sept. 6, 1990.

Before FERREN and FARRELL, Associate Judges, and MACK, Senior Judge.

FERREN, Associate Judge:

This disciplinary proceeding concerns respondent's alleged misconduct as a conservator in two separate cases. In the first case, the Board on Professional Responsibility concluded that respondent had neglected a legal matter entrusted to her, DR 6–101(A)(3), engaged in conduct prejudicial to the administration of justice, DR 1–102(A)(5), and failed to deliver files and assets to a client's duly authorized representative, DR 9–103(B)(4). In the second case, the Board concluded, once again, that respondent had neglected a legal matter entrusted to her and engaged in conduct prejudicial to the administration of justice. In addition, the Board concluded in the second case that respondent had intentionally failed to seek the lawful objectives of her client, DR 7–101(A)(1). As a sanction for all disciplinary violations in both cases, the Board recommends that we suspend respondent from the practice of law for six months and condition any reinstatement on proof of her fitness to resume practice.[2]

---

**1.** Neither respondent nor Bar Counsel has filed a brief in this case.

**2.** In making its recommendation, the Board relies on D.C. Bar R. XI § 3(a)(2), as amended,

which allows this court to require a suspended attorney to furnish proof of rehabilitation for reinstatement following any period of suspension, however short. Before amendment of the disciplinary rules on September 1, 1989, the

We adopt the findings and conclusions of the Board as well as the recommended disposition.

### I. *Bar Docket No. 459–87*

On February 20, 1985, Judge Iraline G. Barnes appointed respondent as the successor conservator of Sara Howell, an adult ward. Respondent accepted the appointment and posted the court-ordered bond. She also filed the required inventory of assets, although she did so approximately seven weeks after it was due. Respondent did not file an accounting by March 20, 1986, after the Deputy Registrar of Wills had mailed her notice to do so. On September 30, 1987, Judge Barnes notified respondent by certified mail that a hearing had been scheduled for November 6 to address her delinquency. The notice was returned unclaimed, and respondent did not appear at the hearing. Judge Barnes continued the hearing until November 27, 1987 and sent notice to respondent of the new hearing date; again, respondent did not attend. By order dated November 30, 1987, Judge Barnes removed respondent as conservator and appointed Henry Brylawski as successor conservator. A copy of the order was mailed to respondent and to Bar Counsel, among others.

Brylawski phoned respondent several times, asking for records concerning Howell. According to Brylawski, respondent promised to turn over her records but never did. She also failed to keep two appointments with Brylawski and failed to respond to his letter requesting both the records and access to Howell's retirement checks. Without assistance from respondent, Brylawski obtained the information he needed and, in so doing, discovered that in the last year of her appointment respondent had neither paid the residential facility where Howell resided nor sent an allowance to Howell. Upon notification by Judge Barnes, Bar Counsel began investigating this case and sent respondent a letter requesting an explanation of her conduct. Respondent did not reply to that letter or to two subsequent letters from Bar Counsel. Bar Counsel subpoenaed respondent to appear in Bar Counsel's office; respondent received the subpoena by personal service but did not appear. Bar Counsel then served respondent with a petition alleging neglect and other disciplinary violations. Respondent signed for the petition but did not file an answer. Respondent did appear at her first disciplinary hearing but did not appear at the second hearing, even though she was notified of the continuance date.

### *Bar Docket No. 274–88*

On August 23, 1985, Judge Barnes appointed respondent as conservator for Willie Claire Bringman, then a 93–year–old resident of the Washington Home for Incurables, Inc. (the Home) and a ward of the court. On September 22, 1986, counsel for the Home filed a motion to remove respondent as conservator because she had not paid the monthly charges due for Bringman's care since she had become conservator and had not responded to phone calls or to a letter from the Home. On October 17, 1986, respondent filed a reply to the motion, claiming the Home's allegations were false. Less than one month later, in exchange for withdrawal of the Home's motion, respondent agreed in a praecipe filed with the court to take steps to assure payment of the arrearages and future charges and to submit monthly reports about the status of the ward's estate until the arrearages had been paid. Shortly thereafter, respondent filed a petition with the court for authorization to pay the arrearages out of the ward's assets. By July 1987, however, respondent was again significantly in arrears in payments to the Home. Respondent also failed to file an accounting due in September 1987. In November 1987, the Home petitioned again for respondent's removal. At a hearing on the petition before Judge Annice Wagner, held on June 10, 1988, a representative from the Home testified that respondent had not made payments which were due and that, although Bringman had died in December 1987, respondent had not filed a suggestion of

---

rules permitted (but also required) proof of rehabilitation as a condition of reinstatement only if the suspension from practice was for a period exceeding one year.

death or a final accounting. *See* Super.Ct. Civ.R. 305(i) ("Upon the death of the person for whom the fiduciary is appointed, the fiduciary shall file a suggestion of death forthwith, and shall file a final account and report verified by the fiduciary within 60 days from the date of death."). Respondent, who was present at the hearing, claimed she had not made payments because she had been having trouble receiving her mail, including checks to Bringman, and because she was experiencing great difficulty locating a co-tenant of Bringman's joint account and obtaining the co-tenant's release of funds. Respondent also stated that although she had completed the accounting (which had been due in September 1987), she "made an error in entrusting delivery to another individual," and the document apparently never reached the court. She then supplied Judge Wagner with a duplicate copy. Respondent also testified that she had not filed the suggestion of death because she was attempting to verify who, if anyone, was Bringman's heir or next of kin. At the conclusion of the hearing, Judge Wagner removed respondent as conservator. Judge Wagner filed a written order to the same effect on June 16, 1988.

Bar Counsel began investigating the case and sent respondent two letters requesting an explanation. Respondent did not answer the letters, call Bar Counsel's office, or go to Bar Counsel's office. After a disciplinary petition had been served on her, respondent did not answer or appear at the disciplinary hearing held on March 7, 1989.

## II.

We agree with the Board that there is sufficient evidence of record that respondent neglected both of these legal matters, DR 6–101(A)(3). She failed to file the required accountings and to make the required payments to the ward's residential facility in both cases; she failed to pay an allowance in the Howell case; and she failed to file a suggestion of death in the Bringman case. There is also sufficient record evidence that respondent engaged in conduct prejudicial to the administration of justice, DR 1–102(A)(5). Her failure to appear before Judge Barnes at the removal hearing in the Howell case, her failure to file an accounting in both cases and a suggestion of death in the Bringman case, and her failure to respond to reasonable inquiries of Bar Counsel support this conclusion. Brylawski's testimony provides sufficient evidence that, in the Howell case, respondent violated DR 9–103(B)(4) by failing to deliver files to a client's duly authorized representative: the successor conservator. According to Brylawski, respondent assured him she would meet with him and deliver the required files, but she defaulted on these assurances. We agree with the Board that although DR 9–103(B)(4) speaks only of delivering property (or paying funds) "to the client," the rule applies equally to a failure to deliver property to a client's duly authorized representative. Finally, the record supports a conclusion that respondent, in the Bringman case, intentionally failed to seek the lawful objectives of her client, DR 7–101(A)(1). Respondent agreed in a written praecipe filed with the court to make payments for Bringman's past and future care. In reliance on this agreement, the residential facility withdrew its motion for her removal as Bringman's conservator. After making one large payment against the arrearages, however, respondent stopped making payments. Intentional misconduct may be inferred from this default because respondent clearly understood her obligations and had induced reliance on her agreement to make all required payments.

In sum, all alleged ethical violations have been established. We turn to the sanction.

## III.

According to D.C. Bar R. XI § 9(g), this court

> shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted.

The Board has recommended a six-month suspension from the practice of law, coupled with a condition that respondent prove fitness to practice law before the court allows reinstatement.

## A.

We consider, first, whether a six-month suspension for the conduct at issue in this case is consistent with prior dispositions involving comparable conduct. We have noted that, generally, we will not suspend an attorney for simple neglect if the incident represents that attorney's first encounter with the disciplinary system. *See In re Reback*, 513 A.2d 226, 232 & n. 4 (D.C.1986) (en banc) ("first instance of neglect, of itself, normally warrants only a reprimand or censure"). On the other hand, we have indicated our willingness to suspend "attorneys found to have neglected a client's legal matters" when the neglect "has been particularly aggravated or has been compounded by other violations." *In re Knox*, 441 A.2d 265 (D.C.1982) (three-month suspension imposed for one case of neglect resulting in prejudice to client where attorney had record of prior, similar disciplinary infraction).[3]

In considering whether Board-recommended sanctions are consistent with prior dispositions, we have focused not only on the gravity and frequency of the misconduct and on the respondent's record, if any, of prior discipline, *see In re Roundtree*, 467 A.2d 143, 147 (D.C.1983) (per curiam), but also on mitigating factors such as the respondent's remorse, incapacity because of illness or stress, cooperation with Bar Counsel, and organized bar or pro bono activities. *See Reback*, 513 A.2d at 233 (considering in mitigation admission of wrongdoing, contrition, cooperation during disciplinary proceedings, restitution to client, and previously unblemished record); *Washington I, supra* note 3, 489 A.2d at 452 (considering in mitigation "record of *pro bono* service and the absence of any prior ethics violation"); *In re Whitlock*, 441 A.2d 989, 992 (D.C.1982) (per curiam) (considering various mitigating factors: admission of wrongdoing, contrition, previously unblemished record, lack of prejudice to clients, and severe physical and mental strain).

In the present case, respondent was responsible for neglect in two cases, as well as for intentional misconduct in one of them; she acted with prejudice to the administration of justice in both cases; she failed to cooperate with Bar Counsel; and she also failed to present evidence or argument to the Hearing Committees or to the Board in meaningful explanation or in mitigation of her conduct.[4] As to prior disci-

---

3. The suspensions imposed in reported aggravated neglect cases have run the gamut from three months to four years. *See In re Washington,* 489 A.2d 452 (D.C.1985) (per curiam) (*Washington I*) (three-month suspension where matter involved two cases of neglect, each one aggravated by an additional disciplinary violation, but where there were mitigating circumstances); *In re Jones,* 534 A.2d 336 (D.C.1987) (per curiam) (*Jones I*) (six-month suspension where attorney, in one case, neglected legal matter and failed to respond to Bar Counsel's inquiries and, in second case, failed to respond to Bar Counsel's inquiries, and where attorney had long record of prior discipline); *In re Stanton,* 470 A.2d 272 (D.C.1983) (per curiam) (year and a day suspension where attorney, in two separate cases, neglected a legal matter and intentionally failed to seek client's lawful objectives); *In re Smith,* 403 A.2d 296 (D.C.1979) (eighteen-month suspension where attorney, in one case, intentionally abandoned client's cause and, in second case, neglected client's interests while deliberately misleading client); *In re Thorup,* 461 A.2d 1018 (D.C.1983) (per curiam) (two-year suspension where attorney was disciplined for neglect and/or intentional failure to seek lawful objectives of clients in two separate cases, as well as for failure to respond to Bar Counsel's inquiries in third case); *In re Haupt,* 422 A.2d 768 (D.C. 1980) (per curiam) (three-year suspension where attorney with prior disciplinary record neglected, deceived, and intentionally failed to seek lawful objectives of client in one case and, in second case, lied to deputy sheriff); *In re Washington,* 541 A.2d 1276 (D.C.1988) (per curiam) (*Washington II*) (four-year suspension where attorney continued ongoing misconduct not only by "neglect[ing] five legal matters entrusted to him, involving a total of some fourteen clients," but also by committing numerous other ethical violations including misrepresentation, failure to return documents to client, intentional failure to seek client's objectives, charging an excessive fee, and failure to respond to Bar Counsel's inquiries).

4. Respondent did offer an explanation, which Judge Barnes found inadequate, during the re-

pline, the record reflects that respondent received an informal admonition for her failure to respond to the reasonable inquiries of Bar Counsel. (The substantive charges in that proceeding were dismissed upon motion of Bar Counsel.)

We conclude that the Board's recommended six-month suspension is not inconsistent with prior dispositions and thus is appropriate here. *See Jones I, supra* note 3, (court imposed six-month suspension on attorney who, in one case, neglected legal matter and failed to respond to Bar Counsel's inquiries, and, in second case, failed to respond to Bar Counsel's inquiries, and who had long record of prior discipline); *In re Lieber*, 442 A.2d 153, 156 (D.C.1982) (court imposed six-month suspension on attorney who neglected one case and engaged in conduct prejudicial to administration of justice in second case and who exhibited "callous, indeed insensitive, attitude towards both matters under inquiry"); *In re Russell*, 424 A.2d 1087 (D.C.1980) (per curiam) (court imposed six-month suspension where attorney failed to take any substantive action on behalf of client, failed to return client's file upon request, and failed to respond to Bar Counsel's inquiries); *cf. Whitlock* (where several mitigating circumstances existed, court imposed six-month suspension on attorney who, as appellate counsel in two separate criminal appeals, neglected matters, intentionally failed to seek clients' lawful objectives, intentionally

failed to carry out employment contracts, and failed to comply with court orders and respond to Bar Counsel's requests, and who, in separate case, failed to comply with court orders and to respond adequately to Bar Counsel's requests).[5]

We are satisfied, moreover, that the Board's recommendation that we require proof of fitness as a condition of reinstatement is justified. As the Board explained in its report, respondent showed apparent "unwillingness or ... inability to come to grips with her responsibilities to the legal system over a broad range of activities and a long period of time." In amending Rule XI to permit reinstatement to be conditioned on proof of fitness following any period of suspension, see *supra* note 2, we cited the need for greater flexibility in imposing this condition. Respondent has offered no argument against the condition, and we agree with the Board's recommendation that, given respondent's behavior revealed in this record—virtual abandonment of her conservatorship responsibilities in two cases—she should not be permitted to resume practice automatically upon expiration of her suspension. *Compare Jones II, supra* note 5, 544 A.2d at 698–99 (pattern of neglect involving several clients and attorney's "admitted inability to conform her conduct to the requirements of the profession" calls for demonstration of fitness prior to resumption of practice) *with Reback,*

moval hearing in the Bringman case: she represented that her delinquency stemmed, in large measure, from poor postal service and her inability to obtain release of funds from a co-tenant of a joint account.

**5.** This court has imposed longer suspensions in cases where the attorney's neglect has been compounded by a lengthy prior disciplinary record, lack of mitigating circumstances, multiple other violations, and/or involvement of multiple clients. *See, e.g., In re Jones*, 544 A.2d 695 (D.C.1988) (per curiam) (*Jones II*) (court suspended attorney with extensive record of prior discipline for year and a day for neglecting legal matter and engaging in conduct prejudicial to administration of justice, noting respondent was already under suspension from previous disciplinary actions); *In re O'Donnell*, 517 A.2d 1069 (D.C.1986) (per curiam) (court suspended attorney for year and a day and ordered restitution of $1000 where he had neglected legal mat-

ters and intentionally failed to seek client's lawful objectives, to client's detriment, and failed to respond to Bar Counsel's reasonable inquiries); *In re Roundtree*, 467 A.2d 143 (D.C.1983) (court suspended non-contrite attorney with prior disciplinary record for year and a day where, in disciplinary case involving four separate clients, court adopted Board's findings of four instances of neglect, two instances each of intentional failure to seek client's lawful objectives, intentional failure to carry out employment contract, and intentional conduct prejudicing client, and one instance of engaging in deceitful conduct); *In re Fogel*, 422 A.2d 966 (D.C.1980) (per curiam) (year and a day suspension imposed on attorney with prior disciplinary record who neglected legal matter, deceived court personnel, and intentionally failed to seek client's lawful objectives and to carry out employment contract, thereby prejudicing client). For further examples, see *Washington II, Stanton, Thorup, Haupt*, and *Smith, supra* note 3.

513 A.2d at 233 (in applying sanction under previous Rule XI, no need to require two attorneys to petition for reinstatement, where attorneys had long unblemished records of professional conduct, cooperated with Bar Counsel, were contrite, and admitted wrongdoing).

Accordingly, respondent shall be suspended from the practice of law in the District of Columbia for six months, effective thirty days from entry of this opinion and order. Moreover, before respondent may be reinstated to the practice of law in this jurisdiction, she must file a petition for reinstatement and furnish proof of her fitness to resume practice. Respondent shall promptly notify all her clients by registered or certified mail, return receipt requested, of this order of suspension pursuant to Rule XI § 14 of the rules governing the District of Columbia Bar.

So ordered.