**In re Ellen R. DELATE, Respondent.**

**No. 91–519.**

District of Columbia Court of Appeals.

Submitted Sept. 16, 1991.
Decided Oct. 8, 1991.

Wallace E. Shipp, Jr., Deputy Bar Counsel, was on the brief for petitioner, the Office of Bar Counsel.*

No brief was filed and no appearance was entered for respondent.

Before FERREN and TERRY, Associate Judges, and NEWMAN, Senior Judge.

PER CURIAM:

The Board on Professional Responsibility has recommended that respondent, a member of the District of Columbia Bar, be suspended from the practice of law for two years, and that she be required to demonstrate her fitness to resume the practice of law if she seeks reinstatement in the Bar after her suspension has run its course. We adopt the Board's recommendation and incorporate by reference its report, which we attach hereto as an appendix. We note that respondent did not appear before either the hearing committee or the Board, did not file a brief with either the Board or this court, and has not in any way contested the charges against her, despite ample

---

* Petitioner's brief was filed with the Board on Professional Responsibility. No briefs were filed in this court.

notice of the pendency of these disciplinary proceedings.

It is therefore ORDERED that respondent, Ellen R. Delate, shall be suspended from the practice of law in the District of Columbia for two years, effective thirty days from the date of this order. Such suspension shall be in addition to the suspension previously ordered in *In re Delate*, 579 A.2d 1177 (D.C.1990). It is

FURTHER ORDERED that if respondent seeks reinstatement in the Bar after her two-year suspension has expired, she shall file with the Board on Professional Responsibility a petition for reinstatement, and shall furnish to the Board proof of her fitness to resume the practice of law. *See* D.C.Bar R. XI, §§ 3(a)(2) and 16(d).

## APPENDIX

## DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of: Ellen R. Delate, Respondent

Bar Docket No. 364–89

## REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

This matter is before the Board on Professional Responsibility on the Report of Hearing Committee Number Three, dated October 22, 1990. The Committee found that Respondent, Ellen R. Delate, Esq., an attorney admitted to practice before the District of Columbia Court of Appeals, violated Disciplinary Rules DR 1–102(A)(5) (conduct prejudicial to the administration of justice); DR 6–101(A)(3) (neglect of a legal matter); DR 7–101(A)(1) (intentional failure to seek the lawful objectives of a client); DR 9–103(B)(3) (failure to maintain complete records and render appropriate accounts); and DR 9–103(B)(4) (failure to

promptly pay or deliver funds, securities, or properties to the client upon request). These violations arise out of Respondent's appointment as conservator for Dorothy Mead Jacobson beginning April 17, 1984 and ending July 17, 1989 when she was removed for failure to complete the Second Accounting and failure to file a Final Accounting following the Ward's death in 1987.[1]

We have reviewed the record and find that the Committee's findings of fact are supported by substantial evidence in the record. In addition, we agree with the Committee's recommended sanction of a two-year suspension with a requirement to show fitness to return to practice. We also recommend that that suspension be imposed in addition to the six-month suspension imposed in *In re Delate*, 579 A.2d 1177 (D.C.1990).

## FINDINGS OF FACT

On November 12, 1982, James McConville, an attorney representing members of the family of Dorothy Mead Jacobson, filed a Petition to Appoint a Conservator of the estate and person of Ms. Jacobson. Bar Ex. 2; (Tr. 9–11). Shortly thereafter, the Court appointed Judith Ludwic as conservator. (Tr. 11). On or about April 17, 1984, upon the withdrawal of Ms. Ludwic, the Court appointed the Respondent, Ellen R. Delate, successor conservator. Bar Ex. 4; (Tr. 11–12). Ms. Delate has been admitted to practice before the District of Columbia Court of Appeals since 1973. *See* Bar Ex. A.

On or about July 6, 1984, Respondent reported that the estate of Ms. Jacobson contained bank deposits of $30,668.29, personal property worth $3,248.28 and stock worth $7,430.94. Report at 3; Bar Ex. 5; (Tr. 25–26). In accordance with her duties as conservator, Respondent was required

---

**1.** Respondent was originally charged with three other violations of the Code, DR 1–102(A)(3) (conduct involving moral turpitude that adversely reflects on fitness to practice law); DR 1–102(A)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation); and DR 9–103(B)(2) (failure to identify and label securities and properties of a client and place in safe deposit box or other place of safekeeping). On the basis of an examination of the contents of a safe deposit box kept in Respondent's name as conservator in this matter, Bar Counsel decided not to pursue these charges.

to make Accountings of the estate of Ms. Jacobson.

The First Accounting was due the following year. Respondent, after receiving an extension, filed the First Accounting on May 29, 1985. Bar Ex. 6; (Tr. 18–19). It was subsequently approved by the Superior Court Probate Division on or about August 12, 1985. Report at 4. The Second Accounting was due on May 17, 1986. Bar Ex. 7. Again Respondent requested and was granted an extension of time in which to file it. Bar Ex. 8. Respondent failed to file this Accounting by June 7, 1986, the time limit granted under the extension.

On or about June 13, 1986, the Court received a letter from the Ward stating that her medical bills had not been paid. This letter also indicated that no money had been provided for the purchase of a winter coat or to take a vacation. Bar Ex. 9.

On or about November 25, 1986, the Clerk sent a letter of warning to Respondent demanding that the Second Accounting be filed by December 9, 1986. Bar Ex. 10. Finally, because the required Second Accounting had still not been filed, the Clerk sent a Removal of Delinquent Fiduciary notice to the Respondent on or about January 13, 1987. Bar Ex. 11. The matter was set for summary hearing on February 5, 1987. Bar Ex. 13. On February 5, 1987, an incomplete Second Accounting was filed by Respondent and the summary hearing was cancelled. Bar Ex. 14.

On June 26, 1987, the Ward died. Bar Ex. 1; (Tr. 13). Since the Ward's death no Final Accounting has been filed by Respondent. The Second Accounting remains incomplete.

The Clerk of the Court sent a Memorandum of Delinquent Fiduciary to the Court and Respondent on March 21, 1989, which was followed on March 23 by a Notice of Summary Hearing to be held on June 27, 1989 for Respondent's failure to file a Second, Third or Fourth Accounting for the Ward. Bar Ex. 1, 15, 16; (Tr. 13). No response from Respondent was received and the hearing date was subsequently reset for July 11, 1989. Bar Ex. 17; (Tr. 42–43).

Following the July 11, 1989 hearing, Respondent was removed as conservator by the Probate Division of Superior Court and replaced by James McConville. Bar Ex. 1 (Tr. 12–13). The matter was then referred to Bar Counsel. Since Mr. McConville's appointment, he has had no contact with Respondent despite numerous attempts by himself and the Auditor–Master to obtain files, information and access to the property and other assets in the Ward's estate. Upon examination, Mr. McConville found that bills had remained unpaid and little had been done to manage the estate. As a result, the estate had not gone to probate, creditors had not been paid, and the remaining assets of the estate had not been distributed to the heirs.

On September 28, 1989 the Office of Bar Counsel sent a letter to Respondent informing her of the allegations being made against her and requesting a response. Bar Ex. 19; (Tr. 55–56). The letter was not returned for failure to deliver and no response was received. (Tr. 56). A similar fate befell additional letters sent by Bar Counsel on October 25, 1989 and November 3, 1989. Bar Ex. 20, 21; (Tr. 56–57).

On November 21, 1989, Bar Counsel filed with the Board a Motion to Compel the Respondent to Respond to Bar Counsel's Written Inquiry. Bar Ex. 23; (Tr. 58–59). Respondent did not file an opposition or respond in any other way. (Tr. 59). Bar Counsel then proceeded to have process servers attempt to serve a subpoena on Respondent requiring her to appear before Bar Counsel and turn over the bank statements, personal property and stock certificates of the Ward. A subpoena sent by regular mail was not returned. Again Respondent failed to respond. Bar Ex. 22, 40; (Tr. 57–58).

On December 13, 1989, the Board ordered Bar Counsel to serve the Motion to Compel on Respondent personally. A copy of this Order was sent to Respondent. Bar Ex. 25; (Tr. 59). Personal service was attempted on ten separate occasions between December 14, 1989 and January 5,

1990 at Respondent's last known residence. These attempts were unsuccessful. Bar Ex. 26, 27, 40 (Tr. 46–48, 60). Responding to Bar Counsel's filing of a Declaration of Reasonable Diligence, the Board issued an order on January 24, 1990 compelling Respondent to respond to Bar Counsel's investigation within ten days. Bar Ex. 29, 40; (Tr. 61). Bar Counsel caused this order to be served upon Respondent by having it posted on the door of her usual place of abode on January 30, 1990. Bar Ex. 30, 31, 40; (Tr. 48–49). Finally, on February 7, 1990 Respondent was personally served with the Board's order. No response was ever received. Bar Ex. 32, 40; (Tr. 49). On March 29, 1990 Respondent was personally served with the petition and specification of charges in this case. Bar Ex. D, 40; (Tr. 49–50).

Although he requested her cooperation soon after he was appointed successor conservator, Mr. McConville has not received any response from Respondent. Bar Ex. 39, (Tr. 27–28). This despite numerous attempts to contact her by telephone and through the mail. (Tr. 14). Similar requests for cooperation made by the Auditor–Master have also gone unheeded. Bar Ex. 38; (Tr. 27). Respondent has not at any time acknowledged or participated in these proceedings.

A hearing was held in this matter before Hearing Committee Number Three on May 8, 1990. At the time of the hearing the exact location of a number of items of the Ward's personal property as well as certain stock certificates, was unknown. Respondent failed to produce these items to the successor conservator. Bar Ex. 34, 35, 37, 38, 39; (Tr. 14–17, 21–24, 25–26, 27–29, 41). Mr. McConville was, however, attempting to gain access to a safe deposit box in Respondent's name for the Ward. The record was kept open to allow him time to discover its contents and report his findings to the Committee. (Tr. 38–39, 43–44). Upon opening the box, Mr. McConville and Bar Counsel discovered the missing personal items (jewelry, coins, silverware) and stock certificates. Affidavit of Marla R. Head; Affidavit of James McConville. Subsequently, Bar Counsel determined not to pursue certain charges. *See* footnote 1, *supra.*

## DR 1–102(A)(5) Conduct Prejudicial to the Administration of Justice

■ The Committee found that Respondent, by failing to complete the Second and Final Accounting, by failing to respond to requests and inquiries of the Auditor–Master and the successor conservator, and by failing to response to written inquiries from Bar Counsel and an order of this Board, violated Disciplinary Rule 1–102(A)(5) by engaging in conduct prejudicial to the administration of justice. Report at 8. The Board agrees with that finding of the Committee.

The record clearly shows that Respondent failed not only to complete the Second Accounting but to file the Final Accounting required by Rule 305(a) of the Probate Rules of the Superior Court. In so doing, Respondent clearly failed to carry out one of her prime fiduciary duties as conservator. As a result of Respondent's failure to file these accountings, creditors have remained unpaid and the rightful heirs have been unable to receive distributions from the estate. Respondent's conduct has therefore impeded the administration of justice.

The Court of Appeals has ruled that when a member of the Bar fails to comply with a request or order of the Auditor–Master, that member violates DR 1–102(A)(5). *In re Jones,* 521 A.2d 1119, 1121 (D.C.1986).[2] In spite of repeated inquiries from the successor conservator and the Auditor–Master, Respondent contacted neither and failed to turn over any files or records. As a result of this conduct, the Auditor–Master and the successor conservator could not perform their duties with regard to the decedent Ward's estate.

Respondent also failed to respond to repeated inquiries of Bar Counsel in the course of its investigation of her conduct.

---

**2.** The fact that Respondent had been removed from the case is irrelevant. Her duty to respond to the Auditor–Master continues after her removal. *Id.*

This Board has found and the Court of Appeals has affirmed that failure "to respond to Bar Counsel's written inquiries is a violation of Disciplinary Rule 1–102(A)(5)." *In re Jones,* 521 A.2d 1119, 1121 (D.C.1986); *In re Whitlock,* 441 A.2d 989 (D.C.1982); *In re Haupt,* 444 A.2d 317 (D.C.1982); *In re Lieber,* 442 A.2d 153 (D.C.1982); *In re Russell,* 424 A.2d 1087 (D.C.1980); *In re Willcher,* 404 A.2d 185 (D.C.1979). In the instant case, Bar Counsel sent Respondent numerous letters explaining the allegations of misconduct and requesting her response. These letters were not returned nor was any response made. In addition, an order compelling her presence issued by this Board was personally served on Respondent, as were subpoenas requesting files and records. They were not obeyed. Rule XI, § 2(b)(3) provides that failure to comply with an order of the Board shall be grounds for discipline. We agree with the Committee that Respondent's conduct, which clearly hindered Bar Counsel's investigation of this matter, violated DR 1–102(A)(5) and merits appropriate discipline.

### DR 6–101(A)(3) Neglect

The Court of Appeals has defined neglect as "indifference and a consistent failure to carry out the obligations which the lawyer has assumed to his client or a conscious disregard for the responsibility owed to the client." *In re Reback,* 487 A.2d 235, 238 (D.C.1985) (per curiam), *adopted in relevant part,* 513 A.2d 226 (D.C.1986) (en banc). Scarcely a more egregious example of neglect could be found than this case.

The record clearly shows that Respondent failed to file the required accountings. Respondent did this despite receiving numerous warning letters and notices of summary hearing for the Court and inquiries from Bar Counsel. In so doing, Respondent failed to carry out one of her "core fiduciary functions" as conservator. *In re Jones,* 521 A.2d 1119, 1121 (D.C.1986); *In re Banks,* 461 A.2d 1038 (D.C.1983). Such behavior constitutes neglect of a legal matter entrusted to the attorney.

Even more distressing was Respondent's failure to fulfill her obligation to administer the Ward's estate. Respondent and her predecessor were appointed Conservator in order to pay the Ward's bills and administer her savings and income because the Court judged that the Ward's degenerative condition prohibited her from carrying on such duties on her own. As was so poignantly brought out at the hearing, Respondent ignored these responsibilities, failing even to provide for the payment of medical bills, rent or the cost of a winter coat. This behavior is even more reprehensible in light of the fact that Respondent received numerous warnings from the Probate Division.

The Board agrees with and adopts the Committee's conclusion that Respondent's behavior constituted neglect in violation of DR 6–101(A)(3).

### DR 7–101(A)(1) Intentional Failure to Achieve a Client's Lawful Objectives

There is evidence in the record that the Ward required disbursements for her medical care and other personal expenses. In addition, the accountings and records required by the Probate Division were not filed. Respondent's failure to file accountings and properly administer the Ward's estate in spite of the warnings and demands made from the Probate Division constitutes "the kind of intentional conduct that is prohibited by DR 7–101(A)(1)." *In re Stanton,* 470 A.2d 272, 275 (D.C.1983).

Although Respondent's behavior most certainly constituted neglect, the Committee correctly concluded that her actions also amounted to an intentional failure to achieve the client's lawful objectives. As the Court of Appeals stated in *In re Reback,* 487 A.2d 235 (D.C.1985) (per curiam), *adopted in relevant part,* 513 A.2d 226 (D.C.1986) (en banc):

Our opinions show that attorneys will be held not only to have been neglectful but also to have intentionally failed to seek the client's lawful objectives if the attorneys were demonstrably aware of their neglect or if their neglect was so perva-

sive that they must have been aware of it.

487 A.2d at 240.

In the instant case, Respondent was clearly made aware of her neglect. She received warnings, demands, notices of summary hearing, and notices of removal as a result of her neglect of her fiduciary responsibilities to the Ward. In addition, correspondence was sent to her from the successor conservator and the Auditor–Master after her removal. Respondent offered no response to the very strong showing that she intentionally failed to seek the lawful objectives of her client. The record establishes by clear and convincing evidence a violation of DR 7–101(A)(1).

*DR 9–103(B)(3) Failure to Maintain Complete Records*

DR 9–103(B)(3) requires that a lawyer

Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

The evidence of record also makes clear that Respondent has violated this Rule. On July 17, 1989, Respondent was removed as conservator because she failed to complete the Second Accounting and never filed the Final Accounting. The Ward had died nearly two years earlier. Thus, Respondent clearly violated DR 9–103(B)(3) by failing to render appropriate accounts.

Upon taking control of the estate, the successor-conservator found that numerous bills had not been paid. In addition, records as to income and disbursements were so vague that it was impossible to determine what the disbursements were for. (Tr. 29). The records were, in fact, so poorly kept that Committee members questioned whether criminal activity had taken place. (Tr. 35–38). As a result, the Board agrees with the conclusion of the Hearing Committee that Respondent violated DR 9–103(B)(3) by failing to maintain complete records.

DR 9–103(B)(4) requires that a lawyer "promptly pay or deliver to a client as requested ... the funds ... in possession of the lawyer which the client is entitled to receive." The Committee found that Respondent, by failing to turn over files, accounts, account records, personal property and stock certificates violated this provision of the Code, and the Board agrees.

The language of DR 9–103(B)(4) is clear. In the instant case Respondent failed to respond to requests made by the successor conservator and the Court. The successor conservator testified that soon after being appointed, he attempted by mail and telephone to contact Respondent to obtain the necessary files, and obtain access to the accounts where the Ward's funds were located. Respondent never replied. In addition, the Auditor–Master attempted to enlist her cooperation so that the accounts could be put under proper control for distribution. Respondent ignored those communications as well. Subpoenas issued by Bar Counsel for the purpose of this investigation to gain control of these funds and property were also ignored. Clearly, Respondent's behavior constitutes a failure to promptly pay.

The only issue is whether a violation of DR 9–103(B)(4) can occur when the person requesting the funds is not actually the client. DR 9–103(B)(4) requires a lawyer to "promptly pay or deliver to a client as requested by a client...." In the instant case, it was not the Ward (who was the client) who requested that funds be turned over to her but the successor conservator and the Court. In a prior adjudication regarding Respondent, the Court of Appeals adopted the Board's position that the "rule applies equally to a failure to deliver property to a client's duly authorized representative." *In re Delate*, 579 A.2d 1177, 1179 (D.C.1990). The situation here is identical. We therefore find that Respondent's conduct in failing to turn over funds and property to the successor conservator and the Court was a violation of DR 9–103(B)(4).

## SANCTION

The Committee recommended that Respondent be suspended from the practice of law for a period of two years with a requirement that she show fitness before being reinstated. The Committee's recommendation is consistent with sanctions imposed in similar cases, and it is amply justified by the evidence of record, the serious nature of Respondent's violations, and her continuing disregard for her responsibilities to the administration of justice and her clients, to say nothing of the disciplinary system. Therefore, the Board adopts the Committee's findings and recommends that Respondent be suspended from the practice of law for two years with a requirement that she show fitness as a condition of being reinstated.

This Board and the Court of Appeals have found it necessary to impose two-year suspensions in numerous other instances of multiple rule violations coupled with a record of prior violations. In *In re Alexander*, 496 A.2d 244 (D.C.1985) the Court of Appeals upheld a recommended two-year suspension for multiple violations of DR 1–102(A)(5), DR 1–102(A)(4), DR 6–101(A)(3), DR 7–101(A)(1) and DR 7–106(C)(5). In adopting the Board's report, the Court found that the Respondent's multiple violations, coupled with his failure to recognize the impropriety of his conduct and his prior violations, justified this severe sanction. *Id.* at 262.

Similarly, in *In re Sheehy*, 454 A.2d 1360 (D.C.1983), the Court of Appeals rejected the Board's recommendation of disbarment and instead suspended the respondent for two years for his violation of DR 6–101(A)(3) (neglect) and DR 1–102(A)(4) (misrepresentation to the client and Bar Counsel). Again the Court considered respondent's prior record of a reprimand for similar behavior.

Even in cases where the respondent had no record of prior discipline, however, the

Court has upheld suspensions of two years where neglect has been coupled with other violations of the Code. *See In re Thorup*, 461 A.2d 1018 (D.C.1983) (attorney violated DR 1–102(A)(5), DR 6–101(A)(3) and DR 7–101(A)(1)). In the instant case Respondent violated DR 6–101(A)(3) by neglecting a legal matter entrusted to her. Her gross neglect led to violations of four other Disciplinary Rules with severe consequences for the Ward and her estate. In spite of the seriousness of these offenses, Respondent has failed to participate in these proceedings. In addition, this is not the first time that Respondent has been disciplined for similar behavior.[3]

Respondent's conduct examined in *In re Delate*, 579 A.2d 1177 (D.C.1990), was very similar to that here. Respondent violated DR 6–101(A)(3), DR 1–102(A)(5), DR 9–103(B)(4), DR 9–103(B)(4) and DR 7–101(A)(1), the exact provisions which have again been violated in the instant case. In that case and this one, Respondent's violations resulted from her failure to properly administer the estate of a client for whom she was conservator and to cooperate with the investigation of Bar Counsel. The prior violations, which seem but a preview to those committed in the instant matter, constitute further evidence of Respondent's studied indifference to her responsibilities to clients, courts and the disciplinary system. Her record of prior discipline supports our conclusion that a two-year suspension is appropriate for the violations at issue in this case.

In *In re Spencer*, M–112–82 (D.C. June 4, 1982), the respondent was disbarred for multiple violations of DR 1–102(A)(5) and DR 6–101(A)(3) as well as other Rules. The Court of Appeals adopted the Board's finding that respondent failed not only to fulfill obligations to his clients but also to respond to the inquiries of Bar Counsel, the Board and the Court of Appeals. The Board found that respondent's pervasive failures and his record of prior discipline merited disbarment.

---

**3.** *In re Delate*, 579 A.2d 1177 (D.C.1990), involved two cases, Bar Docket No. 459–87 and Bar Docket No. 274–88, which were the subject of separate Hearing Committee reports and were consolidated before the Board.

Although Respondent's conduct was not as egregious as that in *Spencer*, she has conducted herself in similar fashion in important respects. Here, as in *Spencer*, Respondent completely neglected her duties to her client. In addition, she has not responded in any way to Bar Counsel, this Board or the successor conservator. The record in this case reveals behavior by Respondent that is completely at odds with her obligations as a lawyer and suggests the necessity of a severe sanction. *See In re Delate*, Nos. 459–87 and 274–88, B.P.R. Report and Recommendation (Dec. 18, 1989) at 12–13. *See also In re Jones*, 544 A.2d 695 (D.C.1988). Respondent's conduct has become a pattern that must not be permitted to continue.

For that reason, we reiterate what we said in our prior Report and Recommendation regarding Ms. Delate, which lead to the September 1990 decision of the Court of Appeals suspending her for six months with a requirement to show fitness: "Based on this pattern of conduct, we believe that the most critical aspect of any sanction the Court should impose is a requirement that Delate prove her fitness prior to reinstatement." *In re Delate*, Nos. 459–87 and 274–88, B.P.R. Report and Recommendation (Dec. 18, 1989) at 14.

The question remains whether the two-year suspension that we and the Hearing Committee have recommended in this case should run concurrent with or be in addition to the six-month suspension imposed by the Court of Appeals in *In re Delate*, 579 A.2d 1177 (D.C.1990).

When separate violations are found in separate proceedings and the cases are at different stages of the disciplinary process, the "Board must recommend the discipline that would be appropriate if all of the matters were before the Board simultaneously as well as the discipline it feels is appropriate on the basis of the individual case before it." *In re Jones*, 544 A.2d 695, 698 (D.C.1988). *See also In re Thompson*, 492 A.2d 866, 867 (D.C.1985);

*In re Dory*, 552 A.2d 518 (D.C.1989). When violations committed by a single attorney result in multiple disciplinary proceedings, sanctions imposed as a result of each proceeding should run concurrently if the violations occurred within the same general time frame. *In re Alexander*, 513 A.2d 781, 793 (D.C.1986). *See also In re Dory*, 552 A.2d 518 (D.C.1989).

It is unclear the extent to which the violations at issue here and in *In re Delate*, 579 A.2d 1177 (D.C.1990), occurred during the same "time frame." Respondent's recently imposed six-month suspension came as a result of conduct engaged in from February 1985 through a time prior to the hearings, held in June 1988 and March 1989, in those two proceedings. In the instant case, Respondent's violations began with her failure to file the Second Accounting in June 1986 and continued through the period prior to the hearing in this case, which was held in May 1990. Although the violations in this case and the prior ones may have stemmed from similar events or circumstances, the long period of time during which Respondent's behavior occurred suggests that the several separate violations are the result of a consistent and continuing failure to meet her professional responsibilities and are not limited to a specific period of time. Therefore, we are not persuaded that the separate violations should be regarded as having arisen in the same "time frame." It follows that the suspension in this case should be imposed in addition to the six-month suspension that Respondent has already received.

Accordingly, the Board recommends that Respondent be suspended from the practice of law for a period of two years, such suspension to be in addition to the six-month suspension Respondent has previously received. In addition, we recommend that the Court's order provide, consistent with the Court's order imposing the prior six-month suspension, that Respondent may be reinstated to the practice of law only after having made the showing of

rehabilitation required by Rule XI, Section 16.

BOARD ON PROFESSIONAL
RESPONSIBILITY
By: /s/ George W. Miller
George W. Miller
Chairman

Date: May 13, 1991

All members of the Board concur in the foregoing Report and Recommendation except Messrs. Carter and Cohen, who did not participate.