**In re Jeanne ROBINSON, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 92–SP–182.**

District of Columbia Court of Appeals.

Submitted Dec. 7, 1993.

Decided Dec. 27, 1993.

Before FERREN and STEADMAN, Associate Judges, and MACK, Senior Judge.

PER CURIAM:

This disciplinary matter is before the court on the report and recommendation of the Board on Professional Responsibility ("Board"), to which respondent has filed no exception with us, that respondent be suspended for a period of thirty days, but staying the execution of suspension; be placed on unmonitored probation for one year, with two conditions of probation: that respondent not be found in contempt of court for failing to appear for conduct occurring since the date this discipline is imposed, and that respondent be ordered to complete a continuing legal education course on professional responsibility and so certify to the Board. The factual and procedural history of this matter are set forth in the Report and Recommendation of the Board, which we incorporate by reference and attach hereto as an appendix.

We review the Board's recommendation in accordance with D.C.Bar R. XI § 9(g) (1993): "[T]he Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." *See In re Hutchinson*, 534 A.2d 919, 924 (D.C.1987) (en banc). We conclude that the Board's findings are supported by substantial evidence in the record and that the Board's recommended sanction is warranted and is not inconsistent with previous dispositions for comparable conduct. *See In re Evans*, No. M–126–82 (D.C. Dec. 17, 1982) (thirty-day suspension appropriate for engaging in conduct that was prejudicial to the administration of justice by failing to appear for two scheduled court appearances).

Accordingly, to commence within thirty days from the date of this opinion, respondent shall be suspended from the practice of law for a period of thirty days, D.C.Bar R. XI, § 3(a)(2) (1993), but this suspension shall be stayed and instead respondent shall be placed on unmonitored probation for a period of one year, D.C.Bar R. XI, § 3(a)(7) (1993), conditioned upon the following terms:

(a) respondent shall not be found in contempt of court for failing to appear for conduct occurring since the date this discipline is imposed; and

(b) respondent shall complete a continuing legal education course on professional responsibility and so certify to the Board. *See In re Spaulding*, 635 A.2d 343, 344 (D.C.1993).

*So ordered.*

APPENDIX

## DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

In The Matter of

JEANNE ROBINSON,

Respondent.

Docket No. 125–92

## REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

### Background

Respondent was charged with two counts of violation of Rule 8.4(d) of the D.C. Rules of Professional Conduct (seriously interfering with the administration of justice), and violation of D.C.Bar Rule XI, § 2(b)(3) (failure and refusal to respond to an order of the Board on Professional Responsibility).

Hearing Committee Number Two heard the matter on October 6, 1992, and December 9, 1992. Respondent, although on notice, did not appear at the first session; she did appear and testify at the second session.

In a brief filed prior to the second session, Bar Counsel recommended that Respondent be suspended for a period of thirty days. However, in a supplemental brief, Bar Counsel, "in light of Respondent's appearance at the resumed hearing, her explanation of her misconduct and her statements of contrition," now recommends public reprimand by the Board as the appropriate sanction. The Hearing Committee found that Respondent violated the aforesaid rules, and also recommended that she be publicly reprimanded by the Board on Professional Responsibility.

### Facts Pertaining to Violations

Respondent, a sole practitioner with an office in her residence, was admitted to practice in the District of Columbia on June 16, 1980. She testified that, as of the date of the hearing, she represented between thirty and fifty clients under the CJA program. (II, p. 55) [1]

1. Transcript of December 9, 1992, hearing.

The events giving rise to this matter related to Respondent's representation of a CJA client charged with unauthorized use of a motor vehicle. A status hearing in the case was scheduled for 9:00 a.m., December 6, 1991, before Judge Harriett Taylor. Respondent previously had discussed with Judge Taylor the possibility of entering a plea on behalf of her client.

Early in the morning of December 6, 1991, two of the Respondent's dogs were injured in a fight, one more severely than the other. Respondent informed Judge Taylor's clerk by telephone that she had a medical emergency, and would be unable to appear in Court at 9 a.m. She stated she would be at home at 11 o'clock, and provided the clerk with her telephone number. Respondent then took both dogs to a veterinarian, where they were treated for their injuries. She left one there, and brought the other back to her home.

At about 11:15 a.m., the clerk informed Respondent by telephone that she was required to appear in court at 2 o'clock that afternoon. Respondent apparently had difficulty locating a dog sitter, and did not leave her home until 2 o'clock, traveling by public transportation. She reached Judge Taylor's Court at 2:35 p.m., by which time the Court was in recess.

Judge Taylor issued an order requiring Respondent to show cause why she should not be held in contempt of court. Following a hearing, during which Respondent was given a full opportunity to explain her tardiness, Judge Taylor held her in contempt and imposed a $150 fine.

Respondent failed to pay the fine within the time limit prescribed, and was fined an additional $150, the second order providing also for incarceration for a period of ten days if the fine was not timely paid.

A copy of the complaint filed by Judge Taylor was sent by Bar Counsel to Respondent at her home address on March 25, 1992. Bar Counsel requested a response by no later than April 4, 1992. No response was received.

Respondent telephoned the Office of Bar Counsel on April 7, 1992, and requested an extension until April 21 to respond. The request was granted; however, no response was received.

On April 30, 1992, Bar Counsel sent a letter to Respondent requesting a response to the complaint by May 5, 1992. No response was received.

Thereafter, Bar Counsel filed and served a motion to compel the filing of a response by Respondent. No opposition was filed, and no response to the motion was received from Respondent.

On June 4, 1992, at the request of Bar Counsel, the Board on Professional Responsibility issued an order which required Respondent to respond to the motion to compel within 10 days. The order was personally served on July 2, 1992. No response to the Board's order was received.

### Discussion

As noted heretofore, Respondent failed to attend the first Committee hearing session. She appeared at the second session only after a subpoena compelling her appearance had been personally served.

Respondent made no effort to contest the charge that she violated Rule XI, § 2(b)(3) or the charge that her failure to cooperate with Bar Counsel violated Rule 8.4(d) of the D.C. Rules of Professional Responsibility, and it is clear that those charges are supported by clear and convincing evidence. However, Respondent largely blamed Judge Taylor for her failure to appear in Court as ordered, asserting that there is "some personal animus that is making it difficult for Judge Taylor and me to interact as judge and attorney." (II, p. 81) She also claimed that Judge Taylor's animus was both "selective" and "personal." (*Id.* at 61) Respondent requested that her claimed differences with Judge Taylor be arbitrated.

There is no justification whatever for Respondent's beliefs regarding Judge Taylor's attitude and feelings towards her. Judge Taylor, during the contempt hearing, listened patiently to a prolonged and irrelevant monologue without showing any animus, and without indicating any inclination to cut off Respondent's rambling and unpersuasive explanations.

The Court of Appeals has expressed itself in no uncertain terms with respect to the seriousness of an unexcused failure by an attorney to appear at a scheduled court proceeding, noting that such behavior causes "a loss of valuable time to the court, its personnel, and to every other participant in the trial. . . ." *Matter of Alexander*, 466 A.2d 447, 450 (D.C.1983).

The Hearing Committee, after the first session, was inclined to recommend censure by the Court; however, following Respondent's appearance at the second session, recommended a public reprimand by the Board. The factors supporting the less severe sanction, as the Committee phrased it, are "Respondent's compelling explanation of her respect for the court and for the judicial system," and the fact that she had "real personal problems that made it difficult for her to be in court as ordered by Judge Taylor." (Comm.Rept., p. 7)

The Board does not believe Respondent's conduct reflected proper respect to the Court or to the judicial system, and does not agree that her personal problems were such as to justify her failure to appear in a timely manner as ordered by Judge Taylor. Nor has Respondent shown any contrition regarding her failure to obey Judge Taylor's order, as suggested by Bar Counsel. On the contrary, she "felt that [her] not showing up in the afternoon was reasonable." (II, p. 12) As noted before, she basically blames Judge Taylor for her misconduct. By placing her personal convenience and desires ahead of those of the Court and the disciplinary system, Respondent demonstrated a marked disrespect for the Court and the judicial system, and wasted a substantial amount of the time and resources of the Court and the Office of Bar Counsel.

The Board, in considering the question of sanction, is strongly influenced by the fact that this episode is only the latest, so far, in a series of similar actions engaged in by Respondent. It is apparent that some of her late or non-appearances in Court have not

resulted in sanctions. Thus, she testified that:

"If the question is, have they handled it the way that Judge Taylor did, no. Because if I don't make a hearing, I tend to go to the judge and in open court apologize, or go to the Court." (II, p. 55)

Moreover, Respondent has been informally admonished twice by Bar Counsel for similar misconduct.

The first letter of admonition is dated April 13, 1989, and was issued because of Respondent's failure to appear at court proceedings in two separate matters before Judge Taylor. In the first, she failed to appear on the date a trial was scheduled. In the second matter, Respondent telephoned Judge Taylor's chambers and asked that a trial date be postponed. She was told to file a written motion, but did not do so. Instead, without informing the Court, she left town to visit her sick mother, and failed to appear on the scheduled trial date. Respondent was found in contempt of court with respect to both failures to appear. Bar Counsel concluded that her action violated DR 1–102(A)(5) (conduct prejudicial to the administration of justice).

The second letter of admonition is dated February 7, 1990. Respondent failed to appear before Judge Nan R. Huhn at a status hearing. She was warned by Judge Huhn that "continued failure to appear in a timely manner would result in a finding of contempt and a referral to Bar Counsel." Later, in another matter, Respondent failed to appear on behalf of a client for a sentencing before Judge Huhn. Respondent was held in contempt, and fined $50. Bar Counsel concluded that Respondent had violated both DR 6–101(A)(3) (neglect of a legal matter) and DR 1–102(A)(5).

Thus, Respondent, prior to the instant case, has twice been found to have engaged in conduct prejudicial to the administration of justice, and has also been found to have neglected a client because of inexcusable failures to appear at previously scheduled court proceedings. Judging from her testimony at the hearing in this matter, Respondent does not appear to understand or appreciate the seriousness of her misconduct; in fact, she does not believe that her repeated failures to meet her court obligations even constituted misconduct.

The Board seriously considered recommending the imposition of an outright thirty-day suspension; however, it notes that Respondent is a sole practitioner, practicing out of her own home; a suspension obviously would have a drastic adverse financial impact on her. On the other hand, the Board does not believe that a public reprimand or even censure by the Court would be likely to deter Respondent from engaging in similar misconduct in the future.

### *Recommendation*

Accordingly, the Board recommends that the District of Columbia Court of Appeals issue an order suspending Respondent for a period of thirty days, but staying the execution of suspension, and placing Respondent on unmonitored probation for one year, with the condition of probation being that Respondent refrain for the period of one year from engaging in any conduct violative of the D.C. Rules of Professional Conduct.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: /s/

James C. McKay

Dated: June 2, 1993

All members of the Board on Professional Responsibility join in this report and recommendation, except Ms. Christensen, who did not participate.