**In re Pamela L. LYLES, Respondent,**

**A Member of the Bar of the District of Columbia Court of Appeals.**

**No. 94–BG–1408.**

District of Columbia Court of Appeals.

Argued June 26, 1996.

Decided July 18, 1996.

Pamela L. Lyles, respondent pro se.

H. Clay Smith, III, Assistant Bar Counsel, for petitioner, the Office of Bar Counsel. Leonard H. Becker, Bar Counsel, entered an appearance for petitioner.

Before TERRY, SCHWELB, and RUIZ, Associate Judges.

PER CURIAM.

The Board on Professional Responsibility ("the Board") has recommended that respondent, a member of our bar, be suspended from the practice of law for six months, and that she be required to demonstrate her fitness to practice before being reinstated. While this case was pending, the Board filed a motion with the court seeking respondent's temporary suspension under Rule XI, § 3(c) of this court's Rules Governing the Bar. The court granted the motion and temporarily suspended respondent on December 15, 1995, pending a final decision in her case.

A copy of the Board's report and recommendation, in slightly edited form, is append-

ed to this opinion. Respondent did not file a brief before the Board, and has not filed with this court either a brief or any exceptions to the Board's recommendation.[1] We are satisfied that the findings of the Board are supported by substantial evidence and that the proposed six-month suspension, coupled with a fitness requirement, is an appropriate sanction. It is therefore

ORDERED that respondent, Pamela L. Lyles, is suspended from the practice of law in the District of Columbia for a period of six months, and that she shall prove her fitness to practice law before being reinstated. Since it appears that respondent has not yet filed the affidavit required by Rule XI, § 14(g) of our Rules Governing the Bar, even though our order of December 15, 1995, specifically drew her attention to that requirement, her six-month suspension shall take effect upon the filing of that affidavit. *See* Rule XI, § 16(c). Her temporary suspension under Rule XI, § 3(c) shall continue until then.

### APPENDIX

### DISTRICT OF COLUMBIA COURT OF APPEALS

### BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of Pamela L. Lyles, Esq., Respondent

Bar Docket Nos. 443–93, 91–94, 218–94, 493–93

### REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

Hearing Committee Number Eight conducted a two-day hearing on a petition that consolidated four separate complaints against Respondent. Four separate clients filed the complaints with the Office of Bar Counsel. The Hearing Committee found that Bar Counsel sustained his burden of showing most of the violations—at least one with respect to each of the four clients—and recommended that Respondent be suspended from the practice of law in the District of Columbia for six months, with a requirement that she prove her fitness to practice before reinstatement. The Factual Background and Hearing Committee's Findings of Fact below are drawn almost verbatim from the Hearing Committee's very capably written Report and Recommendation. We defer to the Hearing Committee's factual findings. *See In re Micheel,* 610 A.2d 231, 234 (D.C.1992). For the reasons explained below, we also agree with the Hearing Committee's recommendation regarding sanction.

#### Factual Background

Count I relates to Respondent's representation of client Ronald M. Nelson in a Chapter 13 bankruptcy matter (Docket No. 443–93). As the result of her conduct in that matter, Respondent was charged with three violations of the District of Columbia Rules of Professional Conduct:

(a) Rule 1.1(b), in that she failed to serve Mr. Nelson with the skill and care commensurate with that generally afforded to clients by other attorneys in similar matters;

(b) Rule 1.3(a), in that she failed to represent Mr. Nelson zealously and diligently within the bounds of the law; and

(c) Rule 8.4(d), in that her failure to appear at a July 30, 1993, hearing and her failure to timely file an amended bankruptcy plan was conduct that seriously interfered with the administration of justice.

Count II relates to Respondent's representation of client John E. Green in his Chapter 13 bankruptcy matter (Docket No. 218–94). She was charged in this matter with a violation of:

(a) Rule 8.4(d), in that her failure to appear at a bankruptcy creditors' hearing

---

1. Our rules provide that "[a] party who fails to file a brief will not be heard at oral argument except by permission of the court." D.C. Ct.App. R. 31(c). Despite her failure to file a brief, or even exceptions to the Board's report as authorized by D.C. Bar Rule XI, § 9(e), respondent moved for leave to present oral argument. Because of the seriousness of this case, and because Bar Counsel did not oppose her motion, we granted it and heard argument from both respondent and Bar Counsel.

on April 8, 1994, seriously interfered with the administration of justice.

Count III grows out of Respondent's representation of client Rita M. Monk in a Chapter 13 bankruptcy matter in the District of Maryland (Docket No. 91–94). As the result of her conduct while representing Ms. Monk, Respondent was charged with violating:

    (a) Rule 1.1(b), in that she failed to represent Ms. Monk with the requisite skill and care; and

    (b) Rule 1.3(a), in that she failed to represent Ms. Monk zealously and diligently within the bounds of the law.

Count IV relates to Respondent's representation of Mr. and Mrs. Melvin Scriven in their Chapter 13 bankruptcy (Docket No. 493–93). As in Count III, Respondent was charged with violations of:

    (a) Rule 1.1(b), in that she failed to serve Mr. and Mrs. Scriven with the requisite skill and care; and

    (b) Rule 1.3(a), in that she failed to represent Mr. and Mrs. Scriven zealously and diligently within the bounds of the law.

1. The Hearing Committee held a two-day hearing at which Respondent appeared and represented herself. Bar Counsel's exhibits ("BX") were admitted without objection.

2. Bar Counsel called as witnesses Rita Monk and Gregory Johnson, Esquire, on Count III and Lynne and Melvin Scriven on Count IV. Bar Counsel presented his case on Counts I (Ronald M. Nelson) and II (John E. Green) through documentary evidence. Bar Counsel also called Merrill Cohen, Esquire, who was recognized without objection as an expert witness in the field of bankruptcy, on the issue of the care and skill required of attorneys representing clients in Chapter 13 bankruptcy cases. (Tr. I at 196–197).

3. Respondent called her paralegal John Edmond as a witness and testified in her own behalf. Respondent's Exhibits ("RX") 1, 8

and 9 were received in evidence. (Tr. I at 59; Tr. II at 54 and 106).

4. Respondent opened her defense by briefly alluding to the fact that she suffered from major depression for which she was receiving regular medical care and that she was taking Amtripoline under a prescription from her psychiatrist.[1] (Tr. II at 89–90). She later described her psychiatric condition in more detail. (Tr. II at 171–180). At the conclusion of the hearing, the Hearing Committee allowed Respondent 10 days to determine whether she intended to present evidence of her psychiatric condition in mitigation.

5. On March 24, 1994, Respondent filed a brief statement requesting the opportunity to present mitigating circumstances. Out of concern for her privacy, Respondent did not proffer on the record any substantive facts to support her disability but apparently provided some type of proffer to Assistant Bar Counsel. A status conference was held on May 5, 1995, and Respondent was placed on a strict schedule for compliance with Board Rule 7.6. She was given a deadline of May 17, 1995, to determine how she would proceed. On May 17, 1995, Respondent requested an additional 10 days, until May 27, 1995, to comply. When Respondent failed to file any response or request by June 20, 1995, the Hearing Committee served notice that it would file its report to the Board in July 1995 and invited any further submissions from Bar Counsel or Respondent by June 30, 1995. Respondent made no further filing with the Hearing Committee. Although she took exception to the Hearing Committee's Report and Recommendation, she failed to make any filing of substance before the Board. She accordingly waived oral argument before the Board. BPR Rule 13.3.

HEARING COMMITTEE'S FINDINGS OF FACT

1. Respondent Pamela L. Lyles is a member of the Bar of the District of Columbia. She was admitted by motion on January 27, 1983, and assigned Bar Number 368523.

2. Respondent testified that she has practiced bankruptcy law since 1974 or 1975.

---

1. Respondent explained to the Committee that the Amtripoline which she was taking had a side

effect in that it caused her to stutter. (Tr. II at 89–90).

(Tr. II at 89, 106–107).[2]  Her particular specialty is representing clients who are facing foreclosure on their homes.

### Count I: Ronald M. Nelson

3.  On May 8, 1993, Respondent was retained by Ronald M. Nelson to represent him in filing a petition under Chapter 13 of the United States Bankruptcy Code. A written agreement was executed wherein Mr. Nelson agreed to pay her $775 in legal fees plus the $150 filing fee.  (BX 22).

4.  On June 4, 1994, Respondent filed a Chapter 13 petition and proposed payment plan on behalf of Mr. Nelson in the United States Bankruptcy Court for the District of Maryland in a petition styled *In re Ronald M. Nelson,* Bankruptcy Case No. 93–1–3165–PM.  (BX 24).

5.  In a written notice dated July 1, 1993, the Bankruptcy Court scheduled a Section 341 meeting of creditors for July 30, 1993, at 11:30 a.m.  at the Office of the United States Trustee.  In that same notice, a confirmation hearing was set for August 4, 1993, at 2:00 p.m.  (BX 24(a), BX 26).

6.  On July 30, 1993, Mr. Nelson appeared in the Office of the United States Trustee ("Trustee") for his Section 341 hearing; Respondent failed to appear.  After waiting one hour for Respondent, the Trustee declined to interrogate Mr. Nelson concerning his bankruptcy plan in the absence of his counsel and terminated the meeting.

7.  Respondent did not appear at the July 30, 1993, meeting of creditors, purportedly because she did not receive the mailed notice described above in ¶ 5. Respondent, however, did not provide any explanation as to why she had not inquired into the status of the Nelson matter when she had not received a scheduling order during the two-month period following her filing of the bankruptcy petition.

8.  Respondent appeared at the scheduled August 4, 1993, hearing.  Confirmation of the proposed plan was not approved because it

contained deficiencies that had not been addressed or corrected.  (BX 30).

9.  On August 4, 1993, the Trustee filed a Motion to Dismiss Mr. Nelson's case because Respondent's failure to appear on July 30, 1993, had caused an unreasonable delay in the case which was prejudicial to the creditors.

10.  On August 7, 1993, the Trustee filed his report to the Bankruptcy Court concerning Mr. Nelson's Chapter 13 statement and plan.  The Trustee did not recommend confirmation of the plan because:

(a) the debtor had failed to submit the required minimum payment of $950 as a deposit on the plan;

(b) the debtor had failed to show there were no post-petition arrearages as to any of his secured debts;

(c) the debtor had failed to provide the Trustee with previously requested documentation verifying the income information provided in the debtor's schedules;

(d) the plan failed to provide for interest on the mortgage default, as provided by the case law; and

(e) the plan was underfunded.

11.  On August 11, 1993, the Court issued an Order denying confirmation of Mr. Nelson's Chapter 13 plan.  The Order, however, granted Mr. Nelson leave to file an amended plan on or before August 24, 1993.  The Court cautioned that Mr. Nelson's case might be dismissed if he failed to file his amended plan in a timely manner.  A copy of this Order was mailed to Respondent.

12.  Respondent did not file Mr. Nelson's amended Chapter 13 plan on or before August 24, 1993, as directed by the Court's Order.  The amended plan was filed two days out of time on August 26, 1993.  In addition, Respondent failed to serve copies of the amended plan on the standing Chapter 13 Trustee, the U.S. Trustee, or any of the parties in interest as required by Bankruptcy Rule 3015(d) and as directed in the Court's August 11, 1993, Order.  The Court's deputy clerk issued a notice of deficiency, but it was

2.  According to her District of Columbia Bar Registration statement, however, Respondent's first bar admission was not until May 10, 1977, in the State of Ohio. (BX A).

not remedied and no explanation was provided to the Court for the late-filed amended plan.

13. On September 28, 1993, the Court issued an Order dismissing Mr. Nelson's case.

14. On October 22, 1993, Respondent moved for reconsideration of the September 28, 1993, Order dismissing Mr. Nelson's case. The motion was denied on October 26, 1993. On November 18, 1993, Respondent filed a second motion for reconsideration of the Order dismissing Mr. Nelson's case based on alleged mistakes made in a Memorandum of Decision dated "October 25, 1993." [3] On December 14, 1993, the Court denied Respondent's second motion for reconsideration.

### Count II: John E. Green

15. On December 14, 1993, Respondent filed a Chapter 13 petition on behalf of her client John E. Green in the United States Bankruptcy Court for the District of Columbia. (Case No. 93–01223). Respondent amended the petition on February 14, 1994. On March 11, 1994, the bankruptcy court issued an order confirming Mr. Green's Chapter 13 plan.

16. Shortly after Mr. Green's plan was confirmed, one of his creditors moved for relief from the automatic stay that had been granted by the Court. Respondent was served with a copy of this motion by the creditor's counsel. On March 16, 1994, the bankruptcy judge, the Honorable Martin Teel, issued a Notice of Preliminary Hearing and scheduled a hearing for April 8, 1994, at 9:30 a.m. Respondent was mailed a copy of this Notice by certified mail on March 18, 1994.

17. Respondent failed to appear at the scheduled preliminary hearing on April 8, 1994. (BX 43, 45).

18. On April 11, 1994, the Court issued an order requiring Respondent to show cause why she should not (a) be required to disgorge the attorney fees paid to her in the case and (b) be prohibited from acting as a member of the Bar of the District of Columbia Bankruptcy Court for six months, based in part upon her failure to appear at the April 8, 1994, hearing and also for her failure to assist her client in other ways. The show cause hearing was scheduled for April 21, 1994, at 9:30 a.m.

19. Respondent appeared one hour late on the morning of April 21, 1994, and the matter was reset to 3:00 p.m. to allow Respondent to attend a brief 2:00 p.m. hearing in the United States Bankruptcy Court in Rockville. Because Respondent did not appear in that Court until 3:00 p.m., Judge Teel was forced to reschedule the show cause hearing for April 22, 1994. (BX 44, BX 47 at pp. 3–4 n. 1).

20. The hearing went forward on April 22, 1994. The evidence at the hearing showed, and the Court found, that Respondent failed to appear at the April 8, 1994, hearing to represent the debtor [4] and that she had no justifiable excuse. The record showed Judge Teel had previously warned Respondent on December 17, 1993, in another case that if, in the future, she failed to appear on behalf of a client when her appearance had not been withdrawn, she would be subject to sanctions. (BX 45 at 43, 51; BX 46). Based on the evidence at the hearing, the Court ordered partial disgorgement of the fees that Respondent had received from Mr. Green and further ordered that Respondent be prohibited from entering her appearance in any new matters before the Bank-

---

**3.** There is no Memorandum of Decision dated October 25, 1993. It appears that Respondent was attempting to address matters in the Court's Memorandum of Decision filed on September 28, 1993.

**4.** Respondent claimed that the debtor was at fault for not contacting her office (BX 45 at 8, 42–43) and further, that her retainer agreement with the client only required her to attend two

hearings. (Tr. II at 137–138). However, in her Disclosure of Compensation of Attorney for Debtor form which she filed with the Court (BX 36), she agreed, in return for her fee, "to render legal service in all aspects of the bankruptcy case, including ... [r]epresentation of the debtor in adversary proceedings and other contested bankruptcy matters." (BX 36).

ruptcy Court in the District of Columbia for six months. (BX 45, BX 46 and BX 47).

### Count III: Rita M. Monk

21. On October 21, 1993, Respondent filed a Chapter 13 bankruptcy petition on behalf of her client, Rita M. Monk, in the United States Bankruptcy Court for the District of Maryland in a matter styled *In re Rita M. Monk*, Case No. 93–1–5544–SD.

22. Hearings on this bankruptcy were held on November 12, 1993, and December 7, 1993. (BX 10, 11). Ms. Monk was present on November 13, 1993. Following that hearing, Ms. Monk was told by Respondent, or misunderstood Respondent to say, that she did not have to be present at the December 7, 1993, proceeding.

23. On December 6, 1993, the Trustee issued his report to the Court. The Trustee recommended that before confirmation of Ms. Monk's bankruptcy plan, six deficiencies needed to be corrected. All six deficiencies were relatively simple to correct.

24. On December 7, 1993, the Court ordered a continuance of the confirmation hearing until January 13, 1994, in light of the Trustee's recommendations. Ms. Monk was not present.

25. Respondent did not communicate with her client between November 12, 1993, and January 13, 1994, and failed to supplement Ms. Monk's plan as recommended by the Trustee. On January 13, 1994, Respondent, without the consent of her client, moved to dismiss Ms. Monk's petition. (Tr. I at 30–35, 42–43).[5] On January 24, 1994, the Court issued an order dismissing Ms. Monk's case. (BX 15, BX 16).

26. Ms. Monk, upset at the dismissal of her case and Respondent's request for addi-tional fees to refile it, terminated Respondent and hired a new attorney, Gregory Johnson, Esq., to handle her bankruptcy. On February 3, 1994, Mr. Johnson filed a motion for reconsideration of the order dismissing Ms. Monk's case and submitted information and documents satisfying the six deficiencies that the Trustee recommended on December 6, 1993, be corrected.

27. On February 7, 1994, the Court set aside its previous Order dismissing Ms. Monk's case and subsequently confirmed her plan.

28. On February 9, 1994, a United States Bankruptcy Judge for the District of Maryland, the Honorable Duncan Keir, referred Respondent to the Attorney Grievance Commission of Maryland based on her deficiencies in representing Ms. Monk. Judge Keir, after consulting with his "fellow jurists," noted that "[w]e are greatly concerned for her clients who are suffering from the lack of performance by Ms. Lyles, and for her welfare as well." (BX 8). Maryland Bar Counsel referred this letter to the District of Columbia's Office of Bar Counsel because Respondent was not admitted to practice in that jurisdiction.

### Count IV: Mr. and Mrs. Scriven

29. On May 15, 1993, Respondent was retained by Melvin and Lynne Scriven to prepare and file for them a petition under Chapter 13 of the Bankruptcy Code. The Scrivens paid Respondent $1,125. (BX 2, BX 3). The Scrivens' primary goal in filing for bankruptcy was to prevent the impending foreclosure of their home. They informed Respondent that the foreclosure was scheduled for June 21, 1993. (Tr. I at 140–141, 157, 170, 172).

30. Mr. and Mrs. Scriven had erratic communications with Respondent between

---

5. Respondent testified that there was a strategic purpose in moving for the dismissal of Ms. Monk's case. (Tr. II at 98–100). While there was some merit to Respondent's argument, Respondent found herself in the position of having to decide on the spot during a hearing whether to dismiss only because Respondent had failed to prepare Ms. Monk's case during the two months prior to the January 13, 1994, hearing. Respondent's action was a last-ditch attempt to salvage whatever remedies Ms. Monk might have still available. Respondent's key failure to represent Ms. Monk with the requisite care and skill was in allowing the matter to reach the stage it was in on January 13, 1994. (See Tr. I at 95, 97). Moreover, when Respondent dismissed the case, she had not consulted with Ms. Monk beforehand and secured Ms. Monk's agreement to the dismissal.

May 15, 1993, and June 21, 1993. Mrs. Scriven, who attempted to contact Respondent's office on numerous occasions, usually only reached her answering machine. On approximately May 30, 1993, Mrs. Scriven spoke with Respondent's paralegal John Edmond and relayed information to him. In the days immediately preceding June 21, Mrs. Scriven called Respondent and left numerous messages on her phone answering machine about the impending foreclosure.

31. Respondent claimed that Mr. and Mrs. Scriven were at fault for not apprising her of the date of foreclosure. While there is no question that the Scrivens did provide her with the foreclosure date prior to June 21, 1993, it also is clear that even had the Scrivens failed to do so, Respondent failed to carry out her obligation to her clients of ascertaining the scheduled auction date, since she knew that her clients' home was scheduled for foreclosure. Respondent did not protect the Scrivens' interests and failed to represent them diligently and zealously.

32. Respondent failed to file a Chapter 13 petition for Mr. and Mrs. Scriven as she was retained to do. The Scrivens' home was foreclosed upon and sold on June 21, 1993.

33. Mr. and Mrs. Scriven sued Respondent in District of Columbia Superior Court, alleging that Respondent's malpractice caused the loss of their home. The Court entered a default judgment of $43,866. Included in this judgment is the $1,125 in legal fees paid by the Scrivens to Respondent. Respondent has not paid this obligation, but instead has sued Mr. and Mrs. Scriven and their lawyer. At the hearing she could not recall why she was suing them. (Tr. II at 162–164).

### ANALYSIS OF VIOLATIONS

#### Diligence and Zeal: Rule 1.3(a)

As Comment [1] to Rule 1.3(a) states,
[t]he duty of the lawyer, both to the client and to the legal system, is to represent the client zealously with the bounds of the law.... A lawyer should act with commitment and dedication to the interests of the clients.

Bar Counsel has established by clear and convincing evidence that Respondent failed to meet her obligations under Rule 1.3(a) as to her clients Ronald Nelson, Rita Monk, and Melvin and Lynne Scriven.

While every lawyer has a duty to represent her clients zealously in every type of matter, the harm that can be caused by a lapse of this duty is particularly acute in Chapter 13 bankruptcy cases involving individual debtors. As United States Bankruptcy Judge Martin Teel noted in one of his Orders in a case involving Respondent:

[A]ttorneys appearing on behalf of debtors in the bankruptcy court usually represent unsophisticated clients who are largely unable to represent themselves adequately.... Typically the debtor is the owner of a modest residence who has fallen into arrears on his mortgage payment and faces foreclosure if the arrearage is not paid immediately. (Footnote omitted).

(BX 47). Rita Monk, Lynne and Melvin Scriven, John E. Green, and Ronald Nelson all fall within Judge Teel's description of the typical bankruptcy client.

In general, Chapter 13 bankruptcies are not complicated matters, but they do require close cooperation and communication between the client and his or her attorney, as well as prompt actions. As related by Bar Counsel's bankruptcy expert, Merrill Cohen, Esquire, and bankruptcy attorney Gregory Johnson, in the typical Chapter 13 bankruptcy case, an automatic stay preventing creditors from taking action against the debtor is in place once counsel files for bankruptcy protection. Counsel for the debtor files a plan with the bankruptcy court that provides for the payment of all or part of the debtor's obligations. The plan is reviewed by a Trustee whose job it is to administer the plan and distribute funds to the creditors pursuant to the Chapter 13 plan. If the plan is complete and in order, it will be confirmed by the bankruptcy judge who in effect issues a wage garnishment order causing money to be taken from the debtor's wages and delivered to the Trustee, who distributes the money to the creditors as provided for in the approved plan.

If the Trustee finds deficiencies or omissions after reviewing the proposed plan, however, it is essential that counsel and the debtor meet to resolve and correct such deficiencies. Failure to resolve such deficiencies likely will result in the dismissal of the bankruptcy petition.

Respondent did not represent Ronald Nelson with the requisite level of diligence and zeal. After taking the case, all Respondent did was file a proposed plan on June 4, 1993, which had numerous deficiencies. Thereafter, she did not have any further contact with her client or the court for approximately two months. Respondent claimed that she failed to appear at the July 30, 1993, meeting of creditors because she did not receive notice of the hearing, but she provided no explanation as to why she had not monitored the case or stayed in contact with her client. Mr. Nelson received notice of the July 30, 1993, hearing and appeared as directed. Respondent failed to represent her client, Mr. Nelson, diligently by her failure to communicate with him or to address the deficiencies in his plan prior to the scheduled August 4, 1993, confirmation hearing.

Respondent further failed to represent Mr. Nelson diligently when she failed to file an amended plan after the court granted her an additional two weeks to do so along with a warning that the case might be dismissed if she failed to file the amended plan by August 24, 1993. As the result of Respondent's failure to file a timely amended plan, Mr. Nelson's case was dismissed.[6]

Respondent also failed to represent Ms. Monk zealously and diligently. While Respondent filed a bankruptcy plan for Ms. Monk, it contained six minor deficiencies that were relatively easy to correct. On December 6, 1993, the Trustee stated in his report to the Court that these six deficiencies should be corrected before approval of the plan. The bankruptcy court continued the case for more than one month until January

13, 1994, to allow Respondent to obtain the necessary information. (Tr. I at 29, 38–39, 41). Respondent failed to diligently represent her client in that she failed to contact Ms. Monk in the intervening month to obtain the necessary information. As a result, Respondent found herself at the January 13, 1994, hearing without the necessary information and without Ms. Monk present. In an effort to extricate herself from a predicament of her own creation, Respondent moved, without her client's consent, to dismiss the case. That motion was granted on January 24, 1994.

When her case was dismissed, Ms. Monk obtained new counsel, Gregory Johnson, Esq., who represented her without charge. The ease with which Mr. Johnson managed to have the dismissal set aside, to correct the deficiencies, and to have the plan approved underscores Respondent's lack of diligence and zeal. (Tr. I at 37–38, 79–80). It would have taken only a small amount of her time and attention to remedy the deficiencies and get the plan approved.

Respondent also failed to represent Melvin and Lynne Scriven with diligence and zeal. When the Scrivens retained her on May 15, 1993, she was aware that there was an impending foreclosure of the Scrivens' home. Notwithstanding, she failed to take any steps to prevent this foreclosure, and five weeks later the Scrivens lost their home by foreclosure due to Respondent's failure to act with commitment to the Scrivens' interests. Respondent failed to determine when the foreclosure was scheduled to occur. She did not take the appropriate steps to file for bankruptcy, although Mrs. Scriven made phone calls to her office in the days prior to the foreclosure. Respondent claimed that Mr. and Mrs. Scriven were at fault for not advising her of the date of the impending foreclosure until after the fact and that she should be held blameless. The Hearing Committee "credit[ed] the Scrivens' testimony that they informed Respondent of the date of foreclosure and that they repeatedly

---

6. Respondent claims that the dismissal of Mr. Nelson's case was his own fault because some of his checks to the Trustee were returned for insufficient funds. (Tr. I at 150). While this may have contributed to the grounds for dismissal,

the fact remains that Respondent completely failed to address any of the deficiencies described in writing by the Trustee in his August 7, 1993, filing with the Bankruptcy Court.

called Respondent's office when the foreclosure became imminent and individuals associated with the foreclosure kept coming to their house." Report and Recommendation of Hearing Committee at 21 n. 14. Respondent also had an overriding duty to make a phone call to learn the date of the foreclosure, since she knew it was imminent. As a bankruptcy attorney, she had an obligation to make any necessary determinations and to take action to prevent her clients from losing their home. Respondent failed to act with the required diligence and zeal.

### Skill and Care: Rule 1.1(b)

Respondent failed to serve Mr. Nelson with the skill and care commensurate with that generally afforded clients by other attorneys in similar matters. Respondent held herself out as a bankruptcy specialist and as such was expected to know bankruptcy rules and procedures. With regard to Mr. Nelson, she clearly did not act with such knowledge or competence.

Respondent did not know when pleadings were timely filed (as opposed to served) under the Bankruptcy Rules, nor did she follow the filing requirements in bankruptcy cases. She failed to serve copies of the purported amended plan on the standing Chapter 13 Trustee, the U.S. Trustee, or any of the parties in interest as required by Bankruptcy Rules. Counsel's "dropping the ball" caused by a lack of competence violates Rule 1.1(b). *In re Sumner*, 665 A.2d 986, 989 (D.C.1995).

Respondent also failed to serve Ms. Monk with the skill and care commensurate with that afforded clients by other attorneys in similar matters, in violation of Rule 1.1(b). Competent representation requires adequate and thorough preparation, as well as continuing attention to the client's needs. Respondent failed Ms. Monk in these areas.

Respondent was apprised in writing of the deficiencies in Ms. Monk's bankruptcy plan. Reasonably competent bankruptcy counsel would have corrected these deficiencies in a timely fashion and filed with the Trustee. Rather than accomplishing this necessary investigation and inquiry, Respondent waited until the day of the confirmation hearing to begin her preparation, which was far too late for a reasonably competent bankruptcy attorney.

The Hearing Committee concluded that Respondent did not violate Rule 1.1(b) with regard to Mr. and Mrs. Scriven. It reasoned that the misconduct in that matter was more in the nature of a failure to represent those clients diligently and zealously under Rule 1.3(a). The Hearing Committee concluded that Bar Counsel had not shown by clear and convincing evidence any area where Respondent lacked the necessary legal knowledge or skill as to the Scrivens. She simply ignored or forgot their matter entirely. No exception is taken here to the Hearing Committee's conclusion that Respondent did not violate Rule 1.1(b) in the Scrivens' matter. We leave that conclusion undisturbed, as we did in *In re Karr*, Bar Docket Nos. 322–89, *et al.* (BPR July 27, 1994), at 22–23, 40, in which we upheld a Hearing Committee's rejection of an alleged Rule 1.1(b) violation under similar reasoning.

### Conduct That Seriously Interferes With The Administration of Justice: Rule 8.4(d)

Respondent was charged in Count I with seriously interfering with the administration of justice with regard to client Ronald Nelson as the result of her failure to appear at the office of the United States Trustee for the July 30, 1993, hearing, which had been scheduled by the Court more than a month prior. There is no question that the willful failure to appear at a court hearing is subject to discipline. *In re Robinson*, 635 A.2d 352 (D.C. 1993); *In re Alexander*, 466 A.2d 447, 450 (D.C.1983). The Hearing Committee concluded, however, that the evidence at the hearing failed to show by clear and convincing evidence that Respondent's failure to appear was willful. There is no dispute that she was not there. Respondent's testimony on the subject, which the Hearing Committee said it had "no reason not to credit," is that she did not receive notice of the hearing in the mail. Report and Recommendation of Hearing Committee at 24. Respondent explained that for a period of time she had

problems receiving her mail, including this time period before the July 30, 1993, hearing. (Tr. I at 102). We agree with the Hearing Committee that Bar Counsel did not adequately show the willfulness of Respondent's failure to appear because of the lack of clarity about whether she received notice.

With regard to Respondent's failure to appear in Court for a hearing in the Green matter, the Hearing Committee found that Respondent willfully engaged in conduct that seriously interfered with the administration of justice in violation of Rule 8.4(d). We agree. Respondent had notice of the hearing and unilaterally made the decision that she did not have to obey the court's order. (Tr. II at 138–140, 142, 142–144). Her violation was all the more egregious because the Bankruptcy Court had previously warned her, when she failed to obey an order to appear in another case, about possible future consequences.

### SANCTIONS

The Hearing Committee articulated well the factors that it confronted in recommending a sanction in this case:

It was ... painfully evident [at the hearing] that Respondent's clients have been and are now at great risk. Not only did we hear evidence of her failure to effectively represent her clients in the four charged cases, but there were numerous other references to deficient representations of other clients. For whatever reason or reasons, Respondent does not appear to have the present ability to zealously and effectively represent her clients.[7] Such ability is essential because, as we noted previously, bankruptcy clients are often unsophisticated individuals who require clear and firm legal guidance in order to avoid losing their most cherished possessions. Respondent's failure to represent her clients zealously did not appear to be the result of lack of concern or callousness. At the hearing, Respondent exhibited a concern for her clients and appeared to want to obtain good results for them. (Tr. II at 90–92). Notwithstanding, she appeared to lack the ability to focus on what she had to do in her various cases.

During the post-hearing status conferences, there were indications that Respondent had a mental illness disability which could be presented in mitigation. Respondent appeared to want to make such a presentation, but no evidence of the nature and extent of the disability ever materialized. (Tr. II at 171–180).[8]

The Hearing Committee is confronted with an individual who has failed to represent three different clients diligently and zealously in violation of Rule 1.3(a), who in one instance failed to represent a client with the requisite skill and care in violation of Rule 1.1(b), and who in another instance engaged in conduct which seriously interfered with the administration of justice in

---

**7.** One Bar exhibit which stood out to the Hearing Committee was a letter from Judge Keir of the Bankruptcy Court for the District of Maryland referring Respondent to Maryland's Bar Counsel. In the second paragraph, Judge Keir observed

[t]hat Counsel, Pamela L. Lyles, Esquire, has been observed by both judges of this Court to repeatedly neglect the matters entrusted to her. This problem reflects a marked change in the performance of Ms. Lyles. Up to some point in the recent past, before the undersigned came on the Bench, I am informed by my fellow jurists that Ms. Lyles was a competent and diligent attorney. We are greatly concerned for her clients who are suffering from the lack of performance by Ms. Lyles, and for her welfare as well. I bring this matter to your attention, for whatever action you deem appropriate.

(BX 8). It was a reference to this letter at the conclusion of the hearing that triggered Respon-

dent's description of her serious depression. (Tr. II at 170).

**8.** The Hearing Committee bent over backwards in encouraging Respondent to see if she qualified for counsel and urging her to meet the deadlines for seeking permission to present evidence of her disability under Board Rule 7.6. She was not able to meet any of the set deadlines. *See* Prehearing Conference Memorandum. Respondent repeatedly failed to follow the Board Rules and was unable to marshal her evidence. *See, e.g.,* Tr. I at 8–10; 274–276; 283–286; Tr. II at 10–19; 45–48; 53–54; 94; 182–186. At times she could not recall significant events or why she was taking certain legal actions. (Tr. I at 8–10; Tr. II at 160–163). She relied extensively on her paralegal for information and direction in her law practice and the instant proceeding. *Id.*

violation of Rule 8.4(d). Respondent has been an attorney for approximately 12 years and has no prior disciplinary violations. (Tr. II at 156). She cooperated with Bar Counsel in this matter and there was no evidence of dishonesty.

Report and Recommendation of Hearing Committee at 27–29.

The Hearing Committee recommended a combined sanction on all of the violations it found of a suspension for six months plus the requirement that Respondent prove her fitness as a condition of reinstatement. We agree.

Sanctions in analogous cases have ranged from short suspensions for multiple first violations coupled with other disciplinary infractions, up to suspensions of one year or more. At one end of the range, serious neglect, coupled with multiple other serious violations, and prior discipline, have warranted two-year suspensions with fitness requirements. *See, e.g., In re Mintz,* 626 A.2d 926 (D.C.1993); *In re Delate,* 598 A.2d 154 (D.C. 1991); *In re Alexander,* 496 A.2d 244 (D.C. 1985); *In re Thorup,* 461 A.2d 1018 (D.C. 1983). In *In re Tinsley,* 582 A.2d 1192 (D.C. 1990), a pattern of carelessness and a callous indifference to obligations to the court and clients warranted a sanction of suspension for one year and a fitness requirement. A similar sanction was imposed in *In re Alexander,* 513 A.2d 781 (D.C.1986). In both *Tinsley* and *Alexander,* however, there were prior histories of disciplinary violations and numerous companion violations including dishonesty.

A suspension of up to six months is generally imposed for cases involving serious neglect and multiple failure to zealously represent clients. *In re Mulkeen,* 606 A.2d 136 (D.C.1992). A six-month suspension and a fitness requirement was imposed in *In re Delate,* 579 A.2d 1177 (D.C.1990) *(Delate I )*, where the attorney seriously neglected two cases and was unable or unwilling to come to grips with many deficiencies occurring over a long period of time. *Accord, In re Cooper (Cooper II ),* 613 A.2d 938 (D.C.1992). In *In re Peek,* 565 A.2d 627, 631 (D.C.1989), neglect and dishonesty, coupled with a prior disci-

plinary record, warranted a suspension of four months. In *In re Thompson,* 492 A.2d 866 (D.C.1985), two instances of neglect warranted a 90–day suspension. In *In re Santana,* 583 A.2d 1011 (D.C.1990), the suspension was 60 days for neglecting two separate matters. An aggregate suspension of 60 days was the result of two instances of neglect in *In re Dory,* 552 A.2d 518 (D.C.1989), and *In re Dory,* 528 A.2d 1247 (D.C.1987). *See also In re Ontell,* 593 A.2d 1038 (D.C.1991).

A number of cases have resulted in suspensions of 30 days for neglect of one or two matters. *In re Foster,* 581 A.2d 389 (D.C. 1990) (with prior disciplinary record). A first, single instance of neglect, even coupled with conduct prejudicial to the administration of justice but without prior discipline, has resulted in a public reprimand. *In re Hill,* 619 A.2d 936 (D.C.1993); *In re Jones,* 521 A.2d 1119 (D.C.1986); *In re Taylor,* 511 A.2d 386 (D.C.1986).

In comparing the facts of this case to those of prior disciplinary cases, it appears that the violations, while serious, do not rise to the level of the misconduct in *Tinsley* and *Alexander.* In this matter, there ware no companion violations that involve dishonesty, and there is no history of prior disciplinary violations. Accordingly, we believe that a suspension of six months, combined with the requirement that Respondent establish her fitness to practice law, is the appropriate disposition in this case.

The Board recognizes that a requirement that Respondent show fitness before reinstatement effectively extends her suspension period. We conclude, however, that a fitness showing is very important to the protection of Respondent's future clients. Respondent demonstrated no remorse or understanding that she had lapsed in her obligations to these clients. She generally blamed the clients for her own failures to pursue the matters she had undertaken for them. For example, Respondent claimed that in the Monk representation there "was absolutely no wrongdoing on [her] part." (Tr. II at 97). Respondent blamed Ms. Monk for not appearing at the hearing or resolving the deficiencies in the bankruptcy petition Respondent prepared. *Id.*

Respondent volunteered to the Hearing Committee that she suffered from serious depression. She made no showing that she has recovered from that illness. The slight information that the Board has about Respondent's mental health problems raises concerns that should be aired in a fitness proceeding. *See In re Steele,* 630 A.2d 196, 201 (D.C.1993).

The Board notes that on December 15, 1995, the District of Columbia Court of Appeals temporarily suspended Respondent pursuant to D.C. Bar Rule XI, section 3(c), based upon a petition by this Board that demonstrated that there are pending in the disciplinary system further complaints alleging misconduct by Respondent very similar to the misconduct proven in this proceeding. While these more recent allegations are unproved, they support the proposition that the disciplinary system should assure itself that Respondent is able to return to practice responsibly at the end of any suspension ordered by the Court. We also observe that while Respondent appeared at the hearing in this matter, and testified and argued on her own behalf, she never has filed a substantive brief responding to these allegations, before the Hearing Committee, this Board, or the Court on the motion for temporary suspension. Her conduct in her own defense echoes some of the issues of delay and indifference raised by her representation of clients.

We do not recommend that Respondent pay restitution to any of her clients. The Scriven matter would normally call for the restitution of the legal fees advanced, but it appears that the legal fees in that matter are included in the judgment which the Scrivens obtained against Respondent (BX 7(c)). In the Green matter, the bankruptcy court already ordered the partial disgorgement of her fee. In both Nelson and Monk, the clients apparently did not suffer financial harm because of Respondent's lapses.

We note that whether Respondent has paid any outstanding judgments obtained against her by former clients is an important factor that will be considered if the Court accepts this recommendation and requires her to establish her fitness to practice law in a reinstatement hearing. *See In re O'Donnell,* 517 A.2d 1069 (D.C.1986).

BOARD ON PROFESSIONAL RESPONSIBILITY

/s/ Patricia A. Brannan

All members of the Board concur in this Report and Recommendation except Mr. Banks and Mr. Rezneck, who did not participate.

January 16, 1996