**In re Charles W. SCHOENEMAN, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

No. 02–BG–1186.

District of Columbia Court of Appeals.

Argued Dec. 16, 2005.

Decided Feb. 2, 2006.

Charles Wilson Schoeneman, pro se.

H. Clay Smith, III, Assistant Bar Counsel, with whom Wallace E. Shipp, Jr., Acting Bar Counsel, was on the brief, for the Office of Bar Counsel.

Before SCHWELB, REID, and FISHER, Associate Judges.

PER CURIAM:

The Board on Professional Responsibility has recommended that Charles W. Schoeneman, a member of the Bar of this court, be suspended from practice for four months. The facts upon which this recommendation is based are set forth in its Report and Recommendation, relevant parts of which are attached hereto as an Appendix and made a part hereof. Briefly, Schoeneman neglected the cases of three clients before the United States District Court, misled them and lied to them as to the status of their cases, concealed from them his suspension from practice

and, we hold, engaged in the unauthorized practice of law.

■ The Board's findings of fact, which are essentially identical to the findings of the Hearing Committee, are supported by substantial evidence. Indeed, although Schoeneman places the blame for his problems on Bar Counsel for unfairly causing him to be suspended from practice, *see In re Schoeneman*, 777 A.2d 259 (D.C.2001) (*Schoeneman I*), he does not seriously challenge the Board's findings of historical fact.

■ With one significant exception, we also adopt the Board's legal analysis. The Board concluded, and we agree, that Schoeneman failed to provide his clients with competent representation, in violation of Rule 1.1(a) of the Rules of Professional Conduct; that he failed to represent his clients with diligence and zeal, in violation of Rule 1.3(a); that he failed to seek the lawful objectives of his clients, in violation of Rule 1.3(b); that he failed to communicate with his clients, in violation of Rule 1.4(a); that he engaged in dishonesty, fraud, deceit or misrepresentation, in violation of Rule 8.4(c); that he engaged in conduct that seriously interfered with the administration of justice, in violation of Rule 8.4(d), as to two of three clients; and that he failed to protect his clients' interests following the termination of the relationship in violation of Rule 1.16(d).

■ The Board concluded, however, that Schoeneman did not engage in the unauthorized practice of law, in violation of Rule 5.5(a), by counseling his clients and by drafting pleadings while he was under suspension by the United States District Court for the District of Columbia. The practice of law is defined in our Rules, in pertinent part, as

the provision of professional legal advice or services where there is a client rela-

tionship of trust or reliance. One is presumed to be practicing law when engaging in any of the following conduct on behalf of another:

    (A) Preparing any legal document . . .;

    (B) Preparing or expressing legal opinions;

    . . . .

    (D) Preparing any claims, demands or pleadings of any kind . . . for filing in any court . . .; [and]

    (E) Providing advice or counsel as to how any of the activities described in subparagraph (A) through (D) might be done . . . .

D.C.App. R. 49(b)(2). In our view, the Board's findings, reproduced in the Appendix, establish, contrary to the Board's conclusion, that Schoeneman's conduct violated Rule 49(b)(2)(E). It may be, as the Board suggests and Bar Counsel apparently concedes, that in some circumstances, *e.g.*, where an attorney's practice has multi-jurisdictional implications, that "when one is considering courts of specialized jurisdiction, such as federal district courts, mere counseling, without filing or appearing on papers, should not be considered the practice of law before the court."[1] In this case, however, at the time of his misconduct, Schoeneman had been suspended from practice in every jurisdiction in which he had been admitted. We agree with Bar Counsel that Schoeneman's conduct "constitute[d] the practice of law by a person who [was] not authorized to do so," that "[a]ny contrary conclusion would send the

wrong message to suspended lawyers in this jurisdiction," and that "[l]awyers suspended or disbarred by this [c]ourt would feel empowered to open a legal 'consulting' service which could include legal counseling and the drafting of pleadings for their clients or customers." *See In re Banks,* 561 A.2d 158, 165 (D.C.1987) (persons may not hold themselves out as lawyers unless they are licensed members of the Bar).

■ D.C. Bar R. XI, § 9(g)(1) provides, in pertinent part, that the court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." As we recently stated in *In re Soininen,* 853 A.2d 712, 723 (D.C. 2004), Rule 9(g)(1)

"endorses the Board's exercise of broad discretion in handing out discipline that is subject only to a general review for abuse in that discretion's exercise." *In re Arneja,* 790 A.2d 552, 558 (D.C.2002) (citations omitted). The Board's recommended sanction thus "comes to the court with a strong presumption in favor of its imposition." *In re Hallmark,* 831 A.2d 366, 371 (D.C.2003). " 'Generally speaking, if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed.' " *Id.* (quoting *In re Goffe,* 641 A.2d 458, 463–64 (D.C.1994)).

Although Bar Counsel contends, not altogether unreasonably, that Schoeneman's misconduct was sufficiently serious to warrant a longer suspension,[2] we conclude

---

**1.** The circumstances to which the Board's suggestion relates are not before us, however, and we do not decide any issue pertaining to them.

**2.** The Hearing Committee recommended, on the other hand that Schoeneman be suspended for three months. Although the Board owed no particular deference to the Commit-

tee's recommendation as to sanction, *In re Hines* 482 A.2d 378, 382 (D.C.1984) (per curiam) (Hearing Committee's recommendation not binding on Board), the proposed increase of the recommended suspension by a single month, though not impermissible, is somewhat unusual.

that the discipline recommended by the Board, and its analysis of the factors bearing on the sanction, is reasonable, especially in the light of the injustice caused by Schoeneman's original temporary suspension in this jurisdiction. *See Schoeneman I*, 777 A.2d at 264–65, *id.* at 265 (concurring opinion) (unwarranted temporary suspension "has been most unfair to Schoeneman and potentially devastating to his career"). Accordingly, we defer to the recommendation of the Board[3] and suspend Schoeneman from practice for four months.[4]

*So ordered.*[5]

## APPENDIX

(Following is a redacted copy of the Report and Recommendation of the Board on Professional Responsibility.) *

## DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

In the Matter of:

CHARLES W. SCHOENEMAN,

Respondent.

**3.** We recognize that in making its recommendation as to sanction, the Board believed that Schoeneman had not engaged in the unauthorized practice of law, a position which we have explicitly rejected in this opinion. Nevertheless, Schoeneman's unauthorized practice was an integral part of actions and omissions which violated several other provisions of the Rules of Professional Conduct, and we conclude that our disagreement with the Board with respect to whether Schoeneman violated Rule 5.5(a) does not warrant an increase in the sanction.

**4.** We direct Schoeneman's attention to the provisions of D.C. Bar R. XI, §§ 14(a) and 16(a), relating to the responsibilities of disbarred and suspended attorneys. For purposes of reinstatement only, Schoeneman's

Bar Docket Nos. 393–00, 63–01, 65–01 & 383–02

## REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

This is an original jurisdiction proceeding arising from Respondent's representation of three clients. We consolidate this proceeding with an unrelated reciprocal discipline matter that is also pending before the Board on Professional Responsibility ("Board").

\*     \*     \*     \*     \*     \*

The specification of charges in the original matter alleged, and Hearing Committee Number Eight ("Hearing Committee") concluded, that in Respondent's federal court practice in the District Court he violated the following District of Columbia Rules of Professional Conduct ("Rules") in the course of three client representations: Rules 1.1(a) (failure to provide competent representation); 1.3(a) (failure to represent zealously and diligently within the bounds of the law); 1.3(b)(1) & (2) (intentional failure to seek lawful objectives of client through reasonably available means, resulting in intentional prejudice or damage to client); 1.4(a) (failure

suspension shall begin upon his filing of the affidavit required by Rule 14(g).

**5.** The allegations in this original proceeding against Schoeneman were consolidated with an unrelated reciprocal discipline matter. The Board concluded that imposition of reciprocal discipline was not warranted. The Board stated in its Report, however, that even if it had concluded that reciprocal discipline should be imposed, it would not have recommended a different, or greater, aggregate sanction. Under all of the circumstances, we find it unnecessary to determine whether any sanction would have been warranted in the reciprocal discipline matter, considered alone, and we do not address that question.

* Judge Reid would also have redacted Section II.F., pp. 15–17.

to keep client reasonably informed about the status of his/her matter and promptly comply with reasonable requests for information); 5.5(a) (unauthorized practice of law when Respondent provided legal advice to clients on their federal matters while under an interim suspension from the District Court); 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation); and 8.4(d) (serious interference with the administration of justice).[1] The Hearing Committee recommended a 90–day suspension, without fitness, for the violations found.

For the reasons set out below, we adopt the Hearing Committee's proposed findings of fact and conclusions of law regarding the original jurisdiction violations. However, we disagree with the Hearing Committee's proposed 90–day suspension, and instead recommend a four-month suspension, without fitness, for both the original proceeding and the reciprocal discipline proceeding.

\*    \*    \*    \*    \*    \*

II. *Original Jurisdiction Matter Regarding Client Representations, Bar Docket Nos. 393–00, 63–01, & 65–01*

A. *Findings of Fact and Conclusions of Law*

Following the revocation of Respondent's Virginia Bar license on consent in October 1997, both the Court and the District Court issued interim suspensions (April 19, 1999 to August 15, 2001, and March 10, 2000 to August 7, 2002, respectively), pending final disposition of their respective reciprocal discipline proceedings based upon the Virginia license revocation. Starting in 1999 and continuing throughout the District Court's 29–month interim suspension, Respondent represented three separate clients with respect to their federal claims of employment discrimination. Based upon ethical complaints from each of these clients, Respondent was charged with professional misconduct in three counts. Count I (Snowden representation) charged violations of Rules 1.1(a) (failure to provide competent representation); 1.3(a) (failure to provide zealous and diligent representation); 1.3(b)(1) & (2) (intentional failure to seek the lawful objectives of client and intentionally prejudicing client during professional relationship); 1.4(a) (failure to keep client reasonably informed of the status of his matter and to promptly comply with reasonable requests for information); 5.5(a) (providing legal advice on a federal matter during his suspension from the District Court); 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); and 8.4(d) (engaging in conduct that seriously interfered with the administration of justice). Count II (Odom representation) and Count III (Ratliff representation) present similar charges (Rules 1.1(a), 1.3(a), 1.3(b)(1) & (2), 1.4(a), 5.5(a),[2] 8.4(c), and 8.4(d)), but they also charge violations of Rule 1.16(d).

These three original jurisdiction cases were consolidated and heard by the Hearing Committee over two days. We adopt the Hearing Committee's proposed findings of fact, which are reproduced below

---

1. Although a violation of Rule 8.4(d) was charged as to all three client representations, the Hearing Committee found clear and convincing evidence as to clients Mr. Snowden and Ms. Odom only. H.C. Rpt. at 31. The Hearing Committee concluded that Bar Counsel had not established violations of Rule 1.16(d) as to clients Ms. Odom and Ms. Ratliff. H.C. Rpt. at 22–27.

2. Bar Counsel did not charge a Rule 5.5(a) violation in the Odom matter, but, post-hearing, argued in favor of finding this violation in all three representations.

(with minor, non-substantive changes) for ease of reference. The Hearing Committee's findings were based upon testimony of the witnesses, the admitted exhibits, and the parties' joint stipulations (filed post-hearing), and are uncontested by the parties:[3]

1. Respondent is a member of the D.C. Bar. He was admitted by examination on October 20, 1958.

2. Respondent also was a member of the Virginia Bar. Respondent also was admitted to practice before the federal courts in the District of Columbia.

## B. *COUNT I*

3. In the summer of 1997, Mr. Richard L. Snowden retained Respondent to represent him in his employment discrimination claims against the Department of Treasury. Mr. Snowden paid Respondent a flat fee of $5,000 for his services. H.C. Rpt. at 3, ¶ 4.

4. On or about September 2, 1998, Respondent was advised by the Acting Director of the Office of Equal Opportunity Program of the Department of Treasury that there was insufficient evidence to support Mr. Snowden's claim. Respondent was informed of Mr. Snowden's right, within 90 days, to file an action in the United States District Court. *Id.* at 3–4, ¶ 5.

5. On December 4, 1998, Respondent filed suit on behalf of Mr. Snowden in the United States District Court for the District of Columbia. *Id.* at 4, ¶ 6.

6. On March 31, 1999, the United States District Court scheduled a status conference in the *Snowden* matter for June 30, 1999. The record does not reflect whether Respondent had advance notice of the status conference. Respondent received telephonic notice on the day of the conference, but he was out of town that day and, thus, did not appear. Consequently, the United States District Court dismissed Snowden's complaint for failure to prosecute, without prejudice. The order of dismissal was sent to Respondent at his address of record. *Id.* at 4, ¶ 7.

7. Subsequently, Respondent failed to advise Mr. Snowden that the case had been dismissed. He also took no further action to reinstate the complaint. *Id.* at 4, ¶ 8.

8. In August 1999, Respondent ceased communicating with Mr. Snowden. Respondent did not contact Mr. Snowden, despite the latter's repeated telephone calls. *Id.* at 4, ¶ 9.

9. In or about May 2000, Respondent encountered Mr. Snowden unexpectedly. (Mr. Snowden had accompanied some of his acquaintances, who apparently also were represented by Respondent, to their meeting with Respondent.) *Id.* at 4, ¶ 10.

10. At this meeting in May 2000, Respondent advised Mr. Snowden that his case was fine when in fact it had been dismissed. He also failed to advise Mr. Snowden of his own temporary suspension from practice before the District Court (effective March 10, 2000). *Id.* at 5, ¶ 11.

11. In or about August 2000, Respondent met with Mr. Snowden again. At this time, Respondent gave Mr. Snowden an amended complaint, but once again did not

---

3. Respondent argued that the Office of Bar Counsel was biased against him, but he did not present any evidence to support this notwithstanding that the Committee afforded him an opportunity to do so. Since he did not meet the burden of showing prosecutorial bias, *In re Thomas,* 740 A.2d 538, 545–46 (D.C.1999), we agree with the Hearing Committee that his claims have no basis.

advise him of the dismissal of the case. *Id.* at 5, ¶ 12.

12. Although Respondent advised Mr. Snowden that he would file the amended complaint, he did not do so because, by that time, he had been suspended by the United States District Court. *Id.* at 5, ¶ 13.

13. Mr. Snowden discovered on his own that his case had been dismissed when he reviewed the file at the United States District Court. *Id.* at 5, ¶ 14.

14. In October or November 2000, Mr. Snowden retained Alan Banov, Esq., to represent him in pursuing his case. Respondent turned over his files to Mr. Banov. On or about December 8, 2000, Mr. Banov filed a motion to re-open the case, contending that the dismissal was based solely on the conduct of Respondent and was not the fault of Mr. Snowden. *Id.* at 5, ¶¶ 15–16.

15. On April 6, 2001, the United States District Court reinstated Mr. Snowden's case. *Id.* at 5, ¶ 16.

16. Mr. Banov then settled Mr. Snowden's case for $17,500. The amount of the settlement, which was not satisfactory to Mr. Snowden, was influenced by Respondent's handling of the case. Mr. Banov testified that the government had indicated during settlement negotiations that it would contest the United States District Court's re-opening of the case. Mr. Banov also testified that due to the delay in litigating the matter, a potential forced settlement claim had become untimely. *Id.* at 5–6, ¶ 17.

17. Mr. Banov's attorney's fees amounted to $14,000, of which $4,000 represented the effort to re-open the case. Mr. Banov waived $3,000 of the bill. *Id* at 6, ¶ 18.

## C. COUNT II

18. In September 1999, Ms. Teloria J. Odom retained Respondent to represent her in her employment discrimination claims against the Department of Transportation. Ms. Odom also had a workplace injury claim. Ms. Odom paid Respondent a total of $7,500. *Id.* at 6, ¶ 19.

19. On or about November 30, 1999, Respondent filed a complaint on behalf of Ms. Odom in the United States District Court. *Id.* at 6, ¶ 20.

20. After filing Ms. Odom's complaint, Respondent failed to obtain service on the defendant and failed to file proof of service. *Id.* at 6, ¶ 21.

21. After filing Ms. Odom's complaint, Respondent failed to communicate with her for a period of several months, and, in particular, he failed to advise her of his temporary suspension by the United States District Court, effective March 10, 2000. *Id.* at 6, ¶ 22.

22. On January 16, 2001, the United States District Court ordered Ms. Odom to file a proof of service within 10 days or suffer dismissal of her case. Respondent failed to respond to the District Court's order. Respondent testified that he failed to effect the required service because "you have to be a member of the Bar to serve the complaint." *Id.* at 6–7, ¶ 23.

23. On January 31, 2001, the United States District Court dismissed Ms. Odom's case without prejudice. *Id.* at 7, ¶ 24.

24. Two days earlier, Ms. Odom had written to Respondent advising him she preferred to retain other counsel and requesting a refund of the attorney fees she had paid. In May 2001, Respondent replied to her but did not refund any of the legal fees he had been paid. *Id.* at 7, ¶ 25.

25. Although he did communicate with her after the dismissal of her case, Respondent did not actually advise Ms. Odom of the dismissal. She learned of the dismissal on her own. *Id.* at 7, ¶ 26.

26. At the time of his disciplinary hearing, Respondent claimed that he was still representing Ms. Odom as to her interests. He had not discussed with her, however, the manner by which he would obtain reinstatement of her claims. *Id.* at 7, ¶ 27.

### D. *COUNT III*

27. Ms. Gwenetter Ratliff retained Respondent to represent her in employment discrimination claims against the Department of Transportation. On or about May 11, 1998, Ms. Ratliff had resigned her position at the Federal Aviation Administration ("FAA"). She alleged, *inter alia,* that the agency had discriminated against her in denying her a promotion in November 1997 and that it retaliated against her by refusing to grant her leave under the Family Medical Leave Act. Between November 1999 and June 2000, Ms. Ratliff paid Respondent $4,000 on an agreed-upon fee of $7,500 for legal services. *Id.* at 7–8, ¶ 29.

28. Respondent represented Ms. Ratliff in a discrimination complaint filed before the United States Equal Employment Opportunity Commission ("EEOC"). On or about February 28, 2000, the EEOC granted summary judgment against Ms. Ratliff. Notice of summary judgment was mailed to Respondent at his address of record. *Id.* at 8, ¶ 30.

29. Subsequently and after his March 10, 2000 suspension by the District Court, Respondent and Ms. Ratliff discussed how to proceed further. He advised her that he would need to appeal the EEOC summary judgment decision within 30 days, file a lawsuit within 90 days, or both. Respondent provided Ms. Ratliff a handwritten draft of a civil complaint to be filed in the District Court. *Id.* at 8, ¶ 31.

30. Despite his discussion with Ms. Ratliff and the fact that he was aware of his obligation to appeal or file a lawsuit, Respondent did neither. He also failed to advise Ms. Ratliff of his suspension by the District Court throughout the representation. *Id.* at 8, ¶ 32.

31. Ms. Ratliff discovered on her own that Respondent had taken no action to prosecute her claims. *Id.* at 8, ¶ 33.

32. On or about January 29, 2001, Ms. Ratliff had written to Respondent advising him she preferred to retain other counsel and requesting a refund of the attorney fees she had paid. In May 2001, Respondent replied to her but did not refund any of the legal fees she had paid. *Id.* at 9, ¶ 34.

33. At the time of the hearing on the merits herein, Respondent was still representing Ms. Ratliff with respect to her federal employment claims. He had not discussed with her, however, the manner by which he would be able to do so (particularly since he was then still under suspension in the District Court). *Id.* at 9, ¶ 35.

34. Ms. Ratliff, having been approached by Respondent after she filed the instant complaint against him, has decided that he will be able to represent her interests adequately. *Id.* at 9, ¶ 36.

### E. *The Hearing Committee's Conclusions*

As a threshold legal matter, the Hearing Committee concluded that the disciplinary process has jurisdiction over Respondent's conduct of his federal legal practice, citing D.C. Bar R. XI, § 1(a); *In re Wade,* 526 A.2d 936 (D.C.1987); *cf. In re Bridges,* 805 A.2d 233, 234–35 (D.C.2002) (rejecting respondent's argument in reciprocal pro-

ceeding that Maryland court had no jurisdiction over misconduct occurring in respondent's federal practice); and *In re Richardson,* 759 A.2d 649, 651–52 (D.C. 2000). H.C. Rpt. at 13–14.

The Hearing Committee concluded as a matter of law that the following violations were established in all three client representations: Rule 1.1(a) (*Id.* at 14–16); Rule 1.3(a) (*Id.* at 16–17); Rule 1.3(b)(1) & (2) (*Id.* at 17–21); Rule 1.4(a) (*Id.* at 21–22); and Rule 5.5(a) in that he continued to engage in professional activities vis-à-vis all three clients with regard to their federal district court matters during the period of his suspension from the District Court (March 10, 2000 through August 7, 2002) (*Id.* at 27–28); and Rule 8.4(c)[4] (*Id.* at 28–30).

As to the violations charged under Rule 8.4(d), the Hearing Committee held they were established as to Mr. Snowden (dismissal of action for failure to appear at status conference) and Ms. Odom (failure to effect service of process on defendants in violation of District Court's order to do so, resulting in dismissal of action), but not with respect to Ms. Ratliff (as to whom Respondent failed to file any court action). (*Id.* at 30–31). Finally, as to the violations charged under Rule 1.16(d) regarding the representations of Ms. Odom and Ms. Ratliff, the Hearing Committee found no violation, determining that the District Court suspension did not *constructively* termi-

nate his representation of these clients (*Id.* at 23). Moreover, the Hearing Committee found that when the clients *actually* terminated Respondent, he took reasonable steps to protect their interests (*Id.* at 24–25). As to the charged failure to return unearned fees to Ms. Odom and Ms. Ratliff, the Hearing Committee found insufficient evidence as to the portion of the fees, if any, that was unearned. (*Id.* at 25–26).

### F. Analysis

Neither party excepted to the Hearing Committee's finding of violations.[5] We agree with the Hearing Committee's analysis of the record in the context of the charges asserted by Bar Counsel, and, therefore, adopt the Hearing Committee's proposed conclusions of law as to violations, except that we find no violation of Rule 5.5(a), for reasons we explain here.

The District Court['s] temporary suspension order of March 10, 2000 provided that Respondent was "temporarily suspended from the practice of law before the United States District Court for the District of Columbia."

The specification of charges alleges Rule 5.5(a) violations in the representation of Mr. Snowden and Ms. Ratliff.[6] Mr. Snowden's complaint, which was filed in the District Court, had been dismissed after Respondent failed to appear for a status conference. Respondent never advised Mr. Snowden of the suspension. During

---

4. The Hearing Committee's determination as to the Rule 8.4(c) violations covers both misleading conduct alleged in the specification of charges and some that was not. In the latter category are the representations made by Respondent to Ms. Odom and Ms. Ratliff regarding the prospects of resurrecting their claims. The Hearing Committee held these additional violations could be considered in aggravation of the sanction. H.C. Rpt. at 29 n. 10.

5. Respondent's exception to the Hearing Committee's report consists of a broadside attack on Bar Counsel's actions in this proceeding and a contention, wholly without merit, that only the District Court was authorized to impose discipline for his misconduct in connection with matters pending before the District Court.

6. Inexplicably, Bar Counsel did not make any Rule 5.5(a) allegations regarding Respondent's representation of Ms. Odom.

the period of temporary suspension, Respondent met with Mr. Snowden, falsely told him that his case in the District Court was "fine" when it had been dismissed and drafted and gave to Mr. Snowden an amended complaint saying that it would be filed. He did not file the amended complaint because he was suspended.

As to Ms. Ratliff, the pertinent facts are that just prior to the temporary suspension, the EEOC granted summary judgment against her employment discrimination claims on which she had been represented by Respondent. During the period of suspension, he discussed with Ms. Ratliff that he would need to file an appeal from the EEOC decision within 30 days or file a lawsuit within 90 days. He did neither of these things, but he did provide Ms. Ratliff a draft of a complaint to be filed in the District Court. He did not file the complaint.

It is clear that Respondent engaged in misconduct with respect to Mr. Snowden and Ms. Ratliff, but we conclude that his misconduct did not include unauthorized practice in violation of Rule 5.5(a). During the time of his suspension by the District Court from March 10, 2000 to August 7, 2002, Respondent clearly was not authorized to practice law *before the District Court.* Neither the Snowden nor the Ratliff matter was pending in the District Court during the period of suspension. The Snowden case was dismissed in 1999, well before the suspension became effective. As for the Ratliff matter, nothing was filed in the District Court during the period of suspension. Thus, we conclude that Respondent did not engage in the practice of law *before the District Court* in those matters during his period of suspension from that court.

According to the record, Respondent was counseling his clients about those matters, outside of court, during the period of suspension. But when one is considering courts of specialized jurisdiction, such as federal district courts, such mere counseling, without filing or appearing on papers, should not be considered the practice of law before the court. It is frequently the case that lawyers counsel clients about the possibility of pursuing claims before courts where they are not admitted to practice. A lawyer licensed only in the District of Columbia, for example, might counsel a client about the pros and cons of pursuing a claim in the United States District Court for the Eastern District of Virginia, but the lawyer would not have to be admitted to practice there to provide such advice. Of course, for papers to be filed in such courts, the lawyer would either have to become admitted to practice or associate himself with another attorney who was admitted to practice, but mere counseling about a case that might be brought before a federal court does not require that one be admitted to practice there.

## III. *Sanction*

We first describe the Hearing Committee's recommendation and Bar Counsel's objection. Next we provide our own analysis and recommendation.

### A. *Hearing Committee Analysis*

The Hearing Committee recommended a 90–day suspension, without fitness. Its recommendation was based upon consideration of the traditional factors analyzed by the Board, *i.e.,* (1) prior discipline; (2) seriousness of the misconduct; (3) prejudice to the clients; (4) violation of other disciplinary rules; (5) conduct involving dishonesty/misrepresentation; (6) respondent's attitude; and (7) any mitigating or aggravating factors. *See In re Jackson,* 650 A.2d 675, 678–79 (D.C.1994) (per curiam); *In re Hutchinson,* 534 A.2d 919, 924 (D.C.1987) (en banc).

Taking these factors in order, the Hearing Committee found no prior discipline. H.C. Rpt. at 32. In light of the Court's decision in *Schoeneman*, the Hearing Committee did not consider as prior discipline any of the reciprocal discipline imposed by other jurisdictions, and since the second reciprocal discipline proceeding, based upon the District Court's reprimand, was then still pending before the Board, the Hearing Committee did not consider that either.

As to the seriousness of the misconduct, the Hearing Committee found a pattern of neglect and misleading conduct in Respondent's handling of the three clients, whom he was not authorized to represent during his period of suspension in the District Court. The Hearing Committee concluded this was "serious" misconduct. *Id.*

The Hearing Committee found Respondent's conduct prejudiced all three clients. *Id.*

The Hearing Committee found that violation of additional disciplinary rules was not a factor in this case. *Id.*

The Hearing Committee found additional dishonesty in the Odom and Ratliff representations based upon evidence that, while under a continuing suspension in the District Court, Respondent lured these clients back by suggesting to them that he could resuscitate their discrimination claims years later, without any reasonable basis in fact or law for making such a claim. *Id.* at 28–30, 32.

The Hearing Committee found it "difficult to assess" Respondent's attitude. *Id.* at 32. It noted that he was "understand-

ably concerned" about the history concerning his suspensions following the revocation of his license in Virginia, and showed contrition about his handling of Ms. Odom's and Ms. Ratliff's matters, but not Mr. Snowden's. *Id.* at 32–33.

On the question of mitigation, the Hearing Committee found the sequence of events in this jurisdiction and the District Court, based upon Respondent's voluntary surrender of his license to practice in Virginia, and specifically the Court's subsequent vacatur of the temporary suspension *nunc pro tunc*, to constitute "unique and compelling circumstances" in mitigation, citing *In re Dory*, 528 A.2d 1247 (D.C. 1987) (per curiam); *In re Dory*, 552 A.2d 518 (1989) (per curiam); *In re McLain*, 671 A.2d 951, 954 n. 4 (D.C.1996); *In re Schneider*, 553 A.2d 206, 212 (D.C.1989); and *In re Hessler*, 549 A.2d 700, 716 (D.C. 1988). H.C. Rpt. at 34–35. On the other hand, the Hearing Committee found Respondent's misconduct aggravated by his dishonesty to his clients, in his affirmative misrepresentations and material omissions regarding the status of their matters, which were designed to conceal his suspension in the District Court. *Id.* at 35–36.

The Hearing Committee engaged in a thoughtful review of sanctions in cases involving neglect aggravated by dishonesty. It found Respondent's conduct less egregious than that in *In re Grimes*, 687 A.2d 198 (D.C.1996) (per curiam), where the Court ordered a one-year suspension with fitness. It found Respondent's dishonesty less serious than that in *In re Reback*, 513 A.2d 226 (D.C.1986) (en banc), where a six-month suspension was imposed. Based on its review of the case law,[7] the Hearing

---

7. The Hearing Committee cited *In re Ontell*, 724 A.2d 1204 (D.C.1999) (per curiam) (90–day suspension, stayed in part, for violations of Rules 1.1(a), 1.1(b), 1.3(a), 1.3(b), 1.3(c), 1.4(a), 1.16(a), 1.16(d), and 8.4(d)); *In re Banks*, 709 A.2d 1181 (D.C.1998) (per curiam) (90–day suspension, stayed in part, for neglect and other misconduct in two matters); *In re*

Committee concluded that a suspension in the range of 90–180 days, without fitness, was appropriate. The Committee recommended a 90–day suspension in light of the mitigating circumstances of Respondent's interim suspension which was later vacated *nunc pro tunc.* H.C. Rpt. at 38.

Bar Counsel contends on exception that the period of suspension should be one year. Citing *In re Lenoir*, 585 A.2d 771 (D.C.1991) (per curiam) (18–month suspension with fitness), *In re Grimes*, 687 A.2d 198 (D.C.1996) (per curiam) (one-year suspension with fitness) and *In re Kennedy*, 605 A.2d 600 (D.C.1992) (per curiam) (nine-month suspension with fitness for unauthorized practice of law), Bar Counsel submits that the Hearing Committee's sanction is too lenient. In addition, Bar Counsel argues that the Court's interim suspension did not harm Respondent, who was engaged in federal practice and thus not affected by the suspension, and so should not be considered in mitigation.

Respondent contends that no sanction should be imposed, primarily on the basis that Bar Counsel erred in seeking reciprocal discipline after deciding not to pursue Respondent in an original proceeding for the same conduct.

### B. *Analysis and Recommendation*

At the outset, we note that our sanction analysis assumes that reciprocal discipline is not warranted. We view the violation for which reciprocal discipline was sought as substantially less serious than that involved in the original proceeding, and therefore our sanction recommendation herein would not change if it were deter-

mined that reciprocal discipline should be imposed.

Respondent's misconduct as to three clients extended over approximately a two-year period from spring of 1999, when he first neglected Mr. Snowden's case, through at least the spring of 2001, when he failed to communicate with Ms. Odom. His neglect of these clients was found to be intentional and each of their cases was actually prejudiced by his neglect. He failed to advise his clients of the suspension. He falsely told Mr. Snowden that his case was "fine" when it had been dismissed due to his failure to appear at a status conference.

We disagree with Bar Counsel that a one-year suspension is appropriate. Respondent's misconduct was not as serious as that in *Grimes*, involving serious neglect of five clients over a six-year period, where the sanction was a one-year suspension plus fitness. The period of neglect here is shorter and there were only three clients instead of five as in *Grimes*.

At the same time, we find that the Hearing Committee's recommendation of a 90–day suspension without fitness does not take into sufficient account the seriousness of the misconduct.

However, Respondent's misconduct is somewhat less serious than the misconduct in *In re Lyles*, 680 A.2d 408, 409 (D.C. 1996) (per curiam), where the sanction was a six-month suspension plus fitness for neglect of four matters over the course of a year and failure to appear at hearings. The Board in *Lyles* summarized its review of sanction decisions: "A suspension of up to six months is generally imposed for cases involving serious neglect and multi-

*Lopes*, 770 A.2d 561 (D.C.2001) (neglect and dishonesty in three client matters warranted six-month suspension, followed by two-year probation; *Kersey* mitigation accepted with respect to neglect but not dishonesty charge); and *Reback*, 513 A.2d at 228 (six-month suspension for deception of client followed by filing of false pleading).

ple failures to zealously represent clients."
*Id.* at 418 (appended Board report).

Respondent's neglect was not as serious as that involved in *In re Ryan,* 670 A.2d 375, 377 (D.C.1996), where respondent received a four-month suspension plus fitness for misconduct involving intentional neglect in four matters over a two-year period. The respondent in *Ryan* had been guilty of sustained neglect, but there was no dishonesty.

Unlike the Hearing Committee, we think Respondent's misconduct was somewhat akin to that in *Reback,* where respondents received six-month suspensions for neglect of one client matter and serious dishonesty in filing a forged complaint. Like this case, the dishonesty in *Reback* stemmed from neglect. The dishonesty in *Reback* was far more offensive than involved here, however, and that difference should be reflected in the sanction.

On balance, we conclude that a four-month suspension is warranted in this matter. Sanction determinations are by their nature difficult and precision is not possible. Considering all the relevant factors, we conclude that a four-month suspension is sufficient to protect the public and to emphasize the point that intentional neglect of client matters compounded by dishonesty intended to conceal the neglect will not be tolerated.

### CONCLUSION

Based upon the foregoing, the Board determines that reciprocal discipline as to the District Court reprimand under D.C. Bar D.C. Bar R. XI, § 11(c) is not appropriate. With regard to the original jurisdiction matters, the Board adopts the findings of Hearing Committee, and concurs with its conclusion of law that Bar Counsel proved by clear and convincing evidence

that Respondent violated Rules 1.1(a), 1.3(a), 1.3(b)(1) & (2), 1.4(a), 8.4(c), and 8.4(d). The Board recommends a sanction in the original proceeding of a four-month suspension, without fitness.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: /S/ Timothy J. Bloomfield

Dated July 30, 2004

All members of the Board concur in this report and recommendation, except Mr. WU, who is recused, and Ms. WILLIAMS, who did not participate.